IN THE TAX COURT OF THE
STATE OF OREGON

Emma E. TAYLOR
and Eugene E. Feltz
*v.*
CLACKAMAS COUNTY ASSESSOR
*and*
DEPARTMENT OF REVENUE,
*Intervenor*
(TC 4302)

Eugene E. Feltz, Palmer, Feltz, Smith & McDonald, Portland, represented Plaintiffs (taxpayers).

Susie L. Huva, Assistant County Counsel, Clackamas County Counsel, Oregon City, represented Defendant (county).

Rochelle Nedeau, Assistant Attorney General, Department of Justice, Salem, represented Intervenor (department).

Decision for Defendant and Intervenor rendered January 13, 1999.

decision withdrawn January 10, 2000.

**CARL N. BYERS, Judge.**

Plaintiffs (taxpayers) appeal the 1997-98 maximum assessed value of real property in Clackamas County. Taxpayers claim that the maximum assessed value is excessive

because it includes the value of a building destroyed by fire in December 1996. The Department of Revenue (department) intervened and supports the Defendant (county) in opposing the claim. The parties have stipulated the facts, and the matter is before the court on cross motions for summary judgment.

## FACTS

Taxpayers own industrial property in Clackamas County that, as of July 1, 1995, consisted of land and two buildings. The real market value of the property shown on the assessment roll for 1995-96 was: Land-$408,240; Building #1-$146,660; Building #2-$166,100; Total-$721,000. On December 31, 1996, Building #1 was completely destroyed by fire. It was not replaced by July 1, 1997. Nevertheless, the assessor included the building in calculating the subject property's maximum assessed value for 1997-98 (Land-$367,415; Building #1-$131,990; Building #2-$149,485; Total-$648,890). Because the July 1, 1997, real market value of the land and the remaining building ($666,550) was greater than the calculated maximum assessed value, the latter became the assessed value for the 1997-98 tax year.

Taxpayers claim that the destroyed building should not be included in the calculation of maximum assessed value. If the value of the destroyed building is removed from the calculation, then the maximum assessed value for the land and remaining building would be only $516,900.

## ISSUE

Must the destruction or deterioration of property be considered in calculating maximum assessed value?

## ANALYSIS

The statutes do not address that issue. Accordingly, the court must construe Article XI, section 11, of the Oregon Constitution. That section had an unusual beginning. By initiative Measure 47, adopted at the November 1996 general election, Oregon voters enacted a constitutional amendment limiting property taxes. However, after studying that amendment for the purpose of enacting conforming and implementing legislation, the legislature concluded that Measure 47

presented too many legal questions, unintended consequences, and difficulties. It therefore drafted a revised Measure 47, and referred the revised measure to the people as Measure 50. At a special election in May 1997, the voters adopted Measure 50, thereby repealing Measure 47.

In view of Measure 50's breeched birth, the court will begin its consideration of that section by first reviewing some basic rules of construction. In *Priest v. Pearce*, the Oregon Supreme Court stated:

> "There are three levels on which that constitutional provision must be addressed: Its specific wording, the case law surrounding it, and the historical circumstances that led to its creation." 314 Or 411, 415-16, 840 P2d 65 (1992).

There is no case law surrounding section 11(1); therefore, the court is left to its wording and historical context. In this regard, the circumstances are somewhat unusual because the legislature drafted the provision to replace a law enacted by initiative. Thus, it is well to remember that:

> "The constitution derives its force and effect from the people who ratified it and not from the proceedings of the convention where it was framed * * *." *Monaghan v. School District No. 1*, 211 Or 360, 367, 315 P2d 797 (1957).

Also:

> "In examining the text and context to determine the meaning of a constitutional provision adopted by the people by initiative or referendum, this court typically gives words of common usage their plain, natural, and ordinary meaning." *Coultas v. City of Sutherlin*, 318 Or 584, 588-89, 871 P2d 465 (1994).

Under the principles enunciated by the Oregon Supreme Court, this court is not to consider the legislative history or "historical circumstances" unless the text and context of the law are ambiguous. *See Roseburg School Dist. v. City of Roseburg*, 316 Or 374, 851 P2d 595 (1993) and *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993). However, the Supreme Court in *Coultas* also noted:

> "It is an unusual case in which the text and context of a constitutional provision reflect the intent of the voters so

clearly that no alternative reading of the provision is possible. Ordinarily, this court will examine the history of a constitutional provision if there is a plausible alternative reading presented to the court." 318 Or at 590. (Footnote omitted.)

With those rules in mind, the court will now consider the text and context of section 11.

■ No language in section 11 addresses or touches upon reducing maximum assessed value when property is damaged or destroyed. Therefore, the court and the parties are left to examine the language that establishes the concept of maximum assessed value. Specifically, section 11(1)(a) provides:

> "For the tax year beginning July 1, 1997, each unit of property in this state shall have a maximum assessed value for ad valorem property tax purposes that does not exceed the property's real market value for the tax year beginning July 1, 1995, reduced by 10 percent."

Taxpayers emphasize the word "property." They reasonably argue that property that no longer exists can hardly have a maximum assessed value. However, "property" is modified by the words "unit of." Thus, the crucial question is: what did the people mean by "unit of property"?

■ A cursory review of the property tax statutes leads the court to conclude that "unit of property" is not a commonly used phrase in property taxation. Oregon's property tax statutes typically refer to "the property" or to a "parcel" of property. *See, e.g.,* ORS 308.215.[1] While it is possible for a "parcel" of property and a "unit of property" to have the same meaning, no statute so provides. ORS 308.407(3)(a), which states: "The farm unit of which the farm parcel is a part * * *," implies that a "farm parcel" is or may be something less than a "farm unit." However, the reader must not lose sight of the fact that in construing section 11, the court is seeking to ascertain the intent of the voters, not the intent of

---

[1] All references to the Oregon Revised Statutes are to 1997.

the legislature. The court has reviewed the property tax statutes only to see if there is a standard or well-known legislative concept that the public might have had in mind or understood. *See e.g., Ester v. City of Monmouth*, 322 Or 1, 903 P2d 344 (1995).

■ The phrase "unit of property" is not a term of art nor a concept with a clear historical meaning commonly understood by the public. *See Ester*, 322 Or at 9. The word "unit" alone has a broad range of meanings, including but not limited to: (1) the smallest or separate part of a larger body, (2) a standard of measurement, (3) a single thing, person or group, (4) an assembly of machinery or a complex or apparatus that serves a single function, and (5) part of a school course or course of study.

■ The words "unit of property" are used in the context of establishing maximum assessed value. Because the statutes have long provided for separate assessment of land, improvements, and personal property, it is reasonable to conclude that the word "unit" refers to the assessable unit. Under ORS 308.215, land and buildings are separately assessed. If there are multiple buildings under a single account, then they will be combined for a single-improvement value. The Supreme Court has held that land and improvement values may be separately appealed. *Nepom v. Dept. of Revenue*, 272 Or 249, 536 P2d 496 (1975). If the voters understood this, then they could have intended for land and improvements to be separate units of property, each having a separate maximum assessed value. If maximum assessed value were based on land and improvements *combined*, then an owner would be unable to appeal the maximum assessed value of only land or only improvements.

■ To implement section 11, the legislature enacted ORS 308.142. That statute does not define the term "unit of property," but it does define "property" as "[a]ll property included within a single property tax account." It then defines "property tax account" to mean "the administrative division of property for purposes of listing on the assessment roll under ORS 308.215." Thus, the legislature appears to have understood "unit of property" to mean each separate listing on the assessment roll.

■ In view of the long-established system of assessing land and improvements separately and allowing separate appeals, the court concludes that the voters intended maximum assessed value to be separately calculated so that it could be separately appealed. Therefore, the maximum assessed value for a single account represents separate calculations for each unit of assessment; *i.e.,* land, improvements, and personal property.

The above analysis answers only part of taxpayers' arguments. It does not address the issue head on.

■ Section 11(1)(c) expressly provides for establishing a maximum assessed value for events that usually *increase* real market value; *i.e.,* where property is new, partitioned or subdivided, rezoned, first picked up as omitted property, first disqualified from exemption, partial exemption or special assessment, or lot-lines are adjusted. The fact that section 11 is silent with regard to adjusting maximum assessed value due to *decreases* in value implies a conscious decision. It requires a stretch of the imagination to envision the authors of section 11 giving such detailed attention to events that increase value yet, through oversight, failing to provide for adjustments due to decreases in value. It is far more likely that they intended any value decreases be reflected in the alternative to maximum assessed value: real market value. As a practical matter, maximum assessed value will apply where property increases in value, but real market value will apply where property decreases in value. Or Const, Art XI, § 11(1)(f).

■ This inference from the absence of any provision for decreasing maximum assessed value is reinforced by an express provision, which states:

> "There shall not be a reappraisal of the real market value used in the tax year beginning July 1, 1995, for purposes of determining the property's maximum assessed value under paragraph (a) of this subsection." Or Const, Art XI, § 11(1)(g).

The court relies on this provision with some hesitancy. It is less than artfully worded in that the word "reappraisal" does not fit "real market value." Normally, value is

not reappraised, property is reappraised. Value is estimated or established.[2] Nevertheless, the provision appears intended to prohibit changing the value that was "used" for the 1995-96 tax year. Again, the drafters of section 11, displaying a thorough working knowledge of the property tax system in Oregon, made no provision for reducing the maximum assessed value. Surely they would have recognized that even in the two years between July 1, 1995, and July 1, 1997, property could deteriorate or be destroyed. They must have concluded that if a decrease in value occurred, it would be measured by the lower real market value.

■ It is important to point out that maximum assessed value is an arbitrary limit. It is possible that section 11 will, over time, result in nonuniform property taxation. The drafters of Measure 50 recognized that because they expressly provided that Article I, section 32, and Article IX, section 1, of the Oregon Constitution, both of which address the issue of uniformity in taxation, do not apply to section 11. Or Const, Art XI, § 11(18). If the voting public approved a scheme that may result in nonuniform taxation, then they implicitly accepted the notion of some degree of "unfairness." That is, by providing for taxation of property at the lesser of maximum assessed value or real market value, they accepted all of the potential inconsistencies and lack of uniformity in between.

Based on the above, the court finds that Plaintiffs' Motion for Summary Judgment should be denied. Now, therefore,

IT IS ORDERED that Plaintiffs' Motion for Summary Judgment is denied, and

IT IS FURTHER ORDERED that Defendant's and Intervenor's Motions for Summary Judgment are granted. Costs to neither party.

---

[2] Probably what the drafters intended to say was that there shall not be a reappraisal of the property's real market value.