CHART DEVELOPMENT CORP.,
*Plaintiff,*
*v.*
DEPARTMENT OF REVENUE,
*Defendant.*
(TC 4359)

Oral argument on cross motions for summary judgment was held August 23, 2000, in the courtroom of the Oregon Tax Court, Salem.

C.H. Olson filed the motion and argued the cause for Plaintiff (taxpayer) *pro se.*

Douglas M. Adair, Assistant Attorney General, Department of Justice, Salem, filed the motion and argued the cause for Defendant (the department).

Decision for Plaintiff rendered October 5, 2000.

**CARL N. BYERS, Judge.**

Plaintiff (taxpayer) appeals the 1997 assessed value of its real property located in Washington County. Taxpayer claims the assessor failed to adequately reduce the assessed value of its property to reflect a lot-line adjustment and razed

improvements. Taxpayer's claims raise issues under Article XI, section 11, of the Oregon Constitution. The matter has been submitted to the court on cross motions for summary judgment.

## FACTS

In 1995, the subject property consisted of 2.9 acres of land, improved with an old house and a stand-alone garage. The real market value (RMV) of the subject property on the 1995-96 tax roll was $113,310–land, $110,730–improvements, total–$224,040. Taxpayer purchased the property on February 6, 1996, for $422,250. On March 14, 1996, the lot lines were adjusted to reflect the sale of a 50 x 100 foot portion to a neighbor. The house was later demolished, and the land platted for subdivision into 11 residential lots.

The Washington County assessor reappraised the property for the 1996-97 tax year and determined the RMV of the land to be $207,320 and improvements (garage) $2,500. Although the garage was later demolished, the RMV of the land was trended up, resulting in a 1997-98 tax roll RMV of $285,100 for land and zero for improvements.

In the November 1996 general election, initiative Measure 47 passed, creating Article XI, section 11, of the Oregon Constitution. That section imposed a new limitation on property taxes. However, when it came time to enact implementing legislation, the 1997 Legislature found the provisions of Measure 47 to be confusing and internally inconsistent. It therefore drafted and submitted Measure 50 to the people by referendum. In a special election held in May 1997, the voters adopted Measure 50, replacing the property-tax limits of Measure 47 with new limits on assessments and tax rates. The new section 11 imposed a maximum assessed value (MAV) on each property initially measured by the property's 1995 RMV, less 10 percent. It also limited the tax rates that could be imposed by taxing districts. Inasmuch as Measure 50 became effective immediately, a MAV had to be calculated for all property for the 1997-98 tax year.

The Washington County assessor calculated a MAV for the subject property by taking the *total* 1995-96 roll value of $224,040, deducting $3,367 for the lot-line adjustment and

then multiplying the resulting $220,280 by 90 percent (reflecting the 10 percent reduction from 1995 market value required by the provision), resulting in an assessed value of $198,250. Taxpayer claims that the improvements were razed before the July 1, 1997, assessment date and therefore $110,730 should be deducted before calculating the property's MAV. In other words, taxpayer claims that the MAV should reflect only the land (reduced by the lot-line adjustment), which would result in a MAV of $98,595 not $198,250.

## ISSUE

Does Article XI, section 11, of the Oregon Constitution, require a separate calculation of MAV for land and improvements?

## ANALYSIS

This is the third time this issue has been brought before the court by Defendant Department of Revenue (the department). In *Taylor v. Clackamas County Assessor*, 14 OTR 504 (1999), the court held that Article XI, section 11, of the Oregon Constitution, imposed a MAV on every assessable unit of property. In that case, the court concluded that inasmuch as land and improvements were separately assessed, a MAV must be separately calculated for each type of property. That decision was appealed by the department to the Oregon Supreme Court. However, the parties agreed to dismiss the appeal if this court would withdraw its decision so the parties could settle. The court agreed to withdraw its decision and the parties settled on terms favorable to the Plaintiffs.

In *Flavorland Foods v. Washington County Assessor*, 15 OTR 182 (2000), the court granted Plaintiff's Motion for Summary Judgment, again holding that Article XI, section 11 required a separately calculated MAV for land and improvements. The appeal period for that case is still open.

Despite those prior decisions, the court does not fault the department for this third attempt. The court recognizes the significant impact of the above-mentioned holdings upon the property-tax system. It also recognizes that this issue is very close and is clouded by uncertainties and confusion initially roiled up by Measure 47.

Article XI, section 11, of the Oregon Constitution, is not clear. It provides no definitions and, like the prior Measure 47, has unanticipated consequences. The department has refined its arguments to the point that they are almost persuasive. The department argues that because Measure 50 replaced Measure 47, the intent was to obtain overall tax relief, not specific adjustments. The department argues that the public typically thinks in terms of the whole property rather than its separately assessed components. The department emphasizes that the statutory scheme is presumed constitutional and that the court in effect must hold ORS 308.142[1] unconstitutional if it maintains that a separate MAV is required. Also, the court's prior holdings make the separate assessment of land and improvements a constitutionally mandated process, something that in the past has been simply a statutory requirement. As indicated, those arguments have great weight. Nevertheless, in struggling to resolve this matter, the court finds itself unable to accept the department's position.

■ As pointed out in *Taylor*, in drafting Measure 50, the 1997 Legislature may have intended to accomplish the same result as Measure 47, but it did not use the same means. Measure 47 imposed a limit on taxes, and thereby focused on the property-tax account. Measure 50 imposes a limit on assessments. Assessments are not made on the basis of a tax account. If the legislative drafters were trying to duplicate Measure 47, one wonders why, since Measure 47 uses the term "each property," Measure 50 used the term "each unit of property." If "each property" referred to property by tax account, what did the drafters intend by using "each unit" of property? Could it have intended each type of property? The property-tax system that Measure 50 addressed provided for separately assessed types of property. Therefore, it would be reasonable to conclude that each unit of property meant each separately assessed unit. The department's position would interpret the term "unit" to mean taxable unit. However, that requires adding a word, something that the courts may not do. Without adding the word "taxable," "unit" logically refers to the assessable unit.

---

[1] All references to the Oregon Revised Statutes are to 1997.

The department contends that the court's holdings in *Taylor* and *Flavorland* means that ORS 308.142 is unconstitutional. The department emphasizes that statutes are presumed constitutional and must be upheld if at all possible. The court agrees that statutes are presumed constitutional. For the year in question, ORS 308.215(1)(e) and (f) expressly required the assessor to enter an assessed value, a MAV, and a RMV on the roll separately for land and for improvements. That statute is also presumed constitutional.[2] If land and improvements each have a separate MAV, the total MAV cannot be greater than the two added together. Regrettably, the legislature's interpretation of section 11 as reflected in ORS 308.142 is not consistent with either section 11 or ORS 308.215(1).

■ The department contends that the direction to separately calculate a MAV for land and improvements in ORS 308.215 was a legislative error or oversight. It argues that the correct interpretation of Article XI, section 11 is found in ORS 308.142, which provides for MAV to be measured on a tax-account basis. However, it is not legislative intent or the legislature's understanding of the measure it drafted that controls the court's decision. What controls is the voters' intent. The department argues that most voters did not understand the details of assessing property but only that a total assessed value determined their total tax. However, the department's argument misses the mark. It is not what the voters understood when they voted upon the measure, but what they intended by the use of the words in the measure.

Although taxable property was listed on the assessment roll by tax account basis, actual assessments were made by types of property such as land, improvements, personal property, and specially assessed property. Such assessments were then totaled for each tax account. Consequently, the total represented separate assessments. When Measure 50 addresses the unit of property, it is addressing each type of property assessed. Admittedly, use of the term "unit" in connection with assessed property is awkward. However, the word is used and therefore must be construed.

---

[2] Although that requirement was repealed by the 1999 Legislature, that repeal is not effective until tax years beginning July 1, 2000. Or Laws 1999, ch 579, § 5.

■ Contrary to the department's position, the court finds that the text of Article XI, section 11 suggests that land and improvements are to have separately calculated MAVs. Article XI, section 11(1)(c) provides for a revaluing of property under certain circumstances. The revaluation is accomplished by applying a ratio of average MAV to average RMV. Thus, under section 11(1)(c)(A), if new improvements are added, "the property" can be revalued. For example, if two bedrooms and a bath are added to a residence, the assessor is to revalue the remodeled residence based on the ratio of the average MAV to the average RMV. In revaluing the improvements, did the public intend that the assessor will also revalue the land?

In section 11(1)(c)(B), if property is partitioned or subdivided, it can be revalued. Typically, land is partitioned or subdivided. If land that is subdivided or partitioned is revalued, did the public intend for the assessor to revalue any improvements located on that land?

In section 11(1)(c)(D), omitted property can be revalued. Did the voters intend that the assessor could revalue 1,000 acres of land because one small barn was omitted from the value of the improvements? The court believes that the public did not intend to allow an assessor to revalue improvements when revaluing land or to revalue land when revaluing improvements.

The department contends that the public was concerned with only the overall tax burden. However, that argument is not consistent with public sentiment or with the tenor of the limitations itself.

Article XI, section 11(2) addresses specially assessed and partially exempt property. That subsection provides for a MAV for specially assessed property. There can be no doubt that specially assessed farmland does not include improvements such as farmhouses, barns, and sheds. Improvements on specially assessed farmland are taxed at their RMV. It is only the land itself that is specially assessed. The same is true for specially assessed open-space land such as golf courses. Golf course clubhouses, tennis courts, and swimming pools are assessed and taxed at their RMV. Consequently, each of those types of properties must have a separately calculated MAV for the land and a separately

calculated MAV for improvements. That logical conclusion is reflected in the statutes. ORS 308.370(5)(a) requires a MAV for specially assessed farmland, and ORS 308.765 requires a MAV for specially assessed open-space land.

Did the voters intend a separate MAV for specially assessed or partially exempt property but not for other property? There is no evidence of any such differentiation between "property." Article XI, section 11(2) does not indicate in any way that the improvements on specially assessed land will have the same MAV or be included within the same MAV.

Further, when specially assessed land is disqualified, it must be revalued under Article XI, section 11(1)(c)(E). That means that when land is disqualified, it must be revalued based on a ratio of MAV to RMV. That ratio will be determined from other land that is not specially assessed. Because not all land has improvements on it, would a voter intend that when specially assessed land is revalued, the ratio would include improvements? It is far more probable that a voter, reading those provisions, would assume a separate MAV for all land, whether specially assessed or not.

The department's position would require the assessor to revalue the land *and* improvements even though only the land had been disqualified from special assessment. That position would use the words "the property" inconsistently. The MAV of "the property" that was specially assessed did not include improvements but, upon disqualification, "the property" would now include improvements. The court does not believe such inconsistency in the use of the words "the property" was intended by the voters.

Finally, the department's position, in some circumstances, produces inequities that would offend the sensibilities of any taxpayer. In *Taylor*, a MAV was established for improvements and land together. Although some of the improvements were destroyed by fire, the land value had increased substantially. Consequently, the assessor did not reduce the total MAV because the total RMV had not decreased. In effect, that approach allowed an increase in land value to offset a decrease in improvement value. However, when taxpayer replaced the destroyed improvements, the replacement improvement was *added* to and increased

the MAV. Taxpayer found that highly objectionable and viewed it as taxing a phantom or ghost improvement. The court agrees that the public did not intend that result.

The public may not have anticipated those specific results. In fact, it appears that neither the legislature nor the tax experts who assisted it in drafting Measure 50 anticipated such results. However, the court cannot base its decision on what was anticipated, but on the text of the provision. The court must choose the interpretation that the public intended. In that light, there can be little doubt that the public would not have chosen an interpretation that results in shifting values between land and improvements in order to maintain the maximum MAV.

In perspective, this case presents another illustration of the confusion and difficulties that can be caused by lack of trust between the public and its elected representatives. Our republican form of government assumes and allows for extensive debate and investigation of proposals before they are enacted into law. When poorly drafted and thought out initiative measures compel the legislature to respond in haste, we often reap unwanted and unanticipated consequences. The decision in this matter is one of them. Now, therefore,

IT IS ORDERED that Plaintiff's Motion for Summary Judgment is granted, and

IT IS FURTHER ORDERED that Defendant's Cross Motion for Summary Judgment is denied. Costs to neither party.