DECISION
Plaintiffs appeal the real market value of residential property identified as Account 182566 (subject property) for the 2010-11 tax year. A trial was held on July 5, 2011, in the Tax Courtroom, Salem, Oregon. Andrew Mathers (Mathers) appeared and testified on behalf of Plaintiffs. Rick Gehrke (Gehrke), a real estate broker with 16 of his years of experience in Bend, Oregon; and Scott Wicklund, a real estate broker with 11 years of experience in Bend, Oregon, testified on behalf of Plaintiffs. Stein O. Totland (Totland), Property Appraiser, appeared and testified on behalf of Defendant.
Plaintiffs offered Exhibits 1 through 35. Totland stated that he did not receive Plaintiffs' Exhibits within the time required by Tax Court Rule-Magistrate Division (TCR-MD) 10 C; he did not receive the exhibits until he personally picked them up from Mathers' office. Plaintiffs' Exhibits submitted to the court were postmarked June 20, 2011, as required by TCR-MD 10 C, and included a "cc" line indicating that they were also sent to Defendant. Totland stated that he had had adequate time to review Plaintiffs' Exhibits. The court admitted Plaintiffs' Exhibits 1 through 35. Defendant's Exhibits A through E were received without objection. *Page 2 
 I. STATEMENT OF FACTS
The subject property is a one story, 2,220 square foot home located on 0.56 acres of land in Bend, Oregon. (Ptfs' Ex 2 at 1.) The house has three bedrooms, two bathrooms, an 888 square foot garage, and was constructed in 1993. (Id.) The subject property is located in the Awbrey Glen golf community, which is home to a members-only golf course and features development "guided by Architectural Guidelines and Covenants, Conditions and Restrictions." (Def's Ex A at 2.) Plaintiffs purchased the subject property from National City Bank on January 27, 2009, for $440,000. (Ptfs' Ex 2 at 2-3; Def's Ex C at 2.)
Mathers testified that the subject property is the "oldest house in the neighborhood[]" and had "been neglected from approximately 2007 to February 2010[]" during which time it was owned by the bank. (Decl of Andrew S. Mathers at 4.) Mathers testified that the subject property was used as a rental property during that time period. (Id.) He testified that the subject property is affected by problems related to a subpar and defective remodel, including poor cabinet work, faulty appliances, mold-infested tiles, mold-infested plumbing, and warped floors. (Ptfs' Ex 26-34.) Mathers testified that there is substantial deferred maintenance on the subject property including an eighteen-year-old roof and furnace as well as warped outdoor siding. Wicklund testified that he visited the subject property and confirmed several defects. Totland testified that he did not request an inspection of the subject property.
A. Plaintiffs' Value Evidence
Plaintiffs request a 2010-11 real market value of $327,133. (Ptfs' Am Compl at 1.) Plaintiffs also request a reduction in the 2010-11 assessed value to $300,000. (Id.) At trial, after a brief discussion of the relationship amongst real market value, maximum assessed value, and assessed value, Mathers clarified that Plaintiffs request a 2010-11 maximum assessed value of *Page 3 
$300,000, which would become the 2010-11 assessed value. Plaintiffs argue that the $300,000 maximum assessed value is supported by the tax records of surrounding properties, which have lower maximum assessed values than the subject property. (Id.) Plaintiffs submitted real property tax statements for 18 of those nearby properties. (Ptfs' Exs 3-20.)
Mathers testified that he used five separate "analyses" in order to support Plaintiffs' requested real market value. Mathers testified that analysis #1 involved adjusting the original purchase price of $440,000 with a rate of depreciation for Bend, Oregon, that he obtained from the Federal Housing Finance Agency (FHFA) Report for 2009-10. (Ptfs' Ex 24.) Mathers testified that the FHFA rate of depreciation for 2009-10 was-23.03 percent; using that adjustment results in a real market value of $338,000. Mathers testified that analysis #2 involved averaging four comparable sales provided by Gehrke, excluding a property that sold in February 2011, for a real market value of $327,133. (Ptfs'Ex 1.) Mathers testified that analysis #3 involved averaging both Gehrke's comparable sales and Defendant's comparable sales and adjusting based on the FHFA rate for real market value of $320,929. He testified that analysis #3 did not include Defendant's "Sargent" property as a comparable. Mathers testified that analysis #4 involved averaging all comparable sales identified by the parties, including the "Sargent" property, and making no FHFA rate adjustment for a total real market value of $361,000. Mathers testified that analysis #5 involved averaging his analyses #2, #3, and #4 for a total real market value of $336,000.
Gehrke provided a comparative market analysis (CMA) report identifying four comparable sales that occurred between February 2010, and February 2011, with an average property value of $319,825. (Ptfs' Ex 1.) He testified that he selected comparable properties for the report based on similar square footage, age, location, bedrooms, and bathrooms. (Id.) *Page 4 
Gehrke also testified that four bedroom houses are more desirable than three bedroom houses. Gehrke testified that if he were to reasonably guess the likely selling price of the subject property, it would be between $310,000 and $320,000.[1] Gehrke testified that he did not make adjustments to the comparable properties listed on his CMA report; however, the different number of bedrooms in the comparables balanced out the differing lot sizes. Wicklund testified that he personally viewed the four comparables in Gehrke's CMA report and considers them to be comparable to the subject property.
Gehrke's comparable #1 is a 2,064 square foot, four bedroom, three bathroom home on a 0.28 acre lot that was built in 1996; it sold on February 18, 2011, for $297,900. (Ptfs' Ex 1.) Gehrke's comparable #2 is a 1,802 square foot, three bedroom, two bathroom home on a 0.21 acre lot that was built in 1997; it sold on March 16, 2010, for $299,900. (Id.) Gehrke's comparable #3 is a 1,784 square foot, three bedroom, two bathroom home on a 7841 square foot lot that was built in 1994; it sold on September 9, 2010, for $331,500. (Id.) Finally, Gehrke's comparable #4 is a 1,876 square foot, three bedroom, two bathroom home on a 0.33 acre lot that was built in 1998; it sold on January 29, 2010, [2] for $350,000. (Id.; Ptfs' Ex 3 at 2.)
Excluding the 3271 Melville property used by both parties (Ptfs' comparable #4, Def's comparable #1), Totland testified as to why he did not consider Plaintiffs' sales to be comparable to the subject property. (See Def's Ex E). Totland testified that Plaintiffs' comparable #1 was sold thirteen months from the assessment date, possessed low-cost and minimal fixtures, vinyl windows, and a smaller kitchen with low-cost countertops, appliances, and cabinets. (Seeid.) Totland testified that Plaintiffs' comparable #2 involved a smaller lot, standard eight-foot ceiling *Page 5 
height, vinyl flooring in the bathrooms, vinyl windows, a smaller kitchen and a small, low-cost deck. (See id. at 2.) Totland testified that Plaintiffs' comparable #3 sold eight months past the assessment date, lacked overall the custom-level finish of the subject property, and possessed dated bathroom fixtures and lighting and a smaller, lower-cost kitchen. (See id. at 4.) However, Totland testified that the 2731 Whitworth property would provide a reasonable comparison for the future January 1, 2011, assessment date. (Id.)
B. Defendant's Value Evidence
Defendant requests that the court sustain the 2010-11 real market value of $410,000, set by the Deschutes County Board of Property Tax Appeals. (Def's Ex A at 3.) Totland testified that because the subject property was purchased in a bank sale, Totland did not consider the original sale to be an arm's-length sale. Totland stated that, although, the subject property was constructed in 1993, extensive remodel work performed in 2005 and 2006 updated the home to an effective age of 1997. (Def's Ex A at 3; Def's Ex B at 5.) Totland testified that that remodel involved upgrades to the lighting fixtures, kitchen appliances, window trim, vaulting, and baseboards, totaling 25 percent of the building components. Because of that remodel work, Totland stated that the effective age of the subject property is in line with the ages of his comparable sales. (Def's Ex A at 3.) Plaintiffs dispute Totland's effective age for the subject property; Mathers testified that the remodel work was subpar and defective. (See Ptfs' Exs 26-34.)
Totland considered three arm's-length sales in the subject property's neighborhood for his sales comparison analysis. (Def's Ex A at 3.) Defendant's comparable #1 is a 1,876 square foot, three bedroom, two bathroom home on a 0.3 acre lot that was built in 1998; it sold on January 29, 2010, for $350,000. (Def's Ex C at 2.) Defendant's comparable #1 (Melville *Page 6 
property) is the same property as Plaintiffs' comparable #4. Defendant's comparable #2 (Sargent property) is a 2,645 square foot, four bedroom, two-and-a-half bathroom home on a 0.3 acre lot that was built in 2001; it sold on February 12, 2010, for $470,000. (Id.) Defendant's comparable #3 is a 2,309 square foot, three bedroom, two bathroom home on a 0.49 acre lot that was built in 1996; it sold on July 27, 2009, for $422,500. (Id.)
Totland adjusted his comparable sales for: 1) the "time from the sale date to the [January 1, 2010], assessment date[;] []2) the living area square footage[;] []3) the garage area square footage[;] and []4) [the] additional bathroom fixtures." (Def's Ex A at 3.) Totland testified that his time adjustment is based on the Bratton Appraisal Group's report. He testified that market values differ based on actual living area, not on the number of bedrooms. Totland concluded an adjusted sales price of $371,300 for the Melville property, $451,800 for the Sargent property, and $403,000 for comparable #3. (Def's Ex C at 2.) The average adjusted sales price of Totland's comparable sales is $408,700. Totland determined a real market value of $409,000, for the subject property, of which $114,000 is attributed to the land component. (Id.; Def's Ex A at 3.) Totland testified that if the February 2009 purchase price of the subject property were time-trended to the January 1, 2010, assessment date using the Bratton report's value of-0.89 percent per month, the real market value for the subject property would be $397,000. (Id.)
Gehrke testified that Totland's comparable #2, the Sargent property, is not comparable to the subject property. He testified that it has four bedrooms whereas the subject property has only three. Additionally, it is newer and larger than the subject property. *Page 7 
 II. ANALYSIS
Plaintiffs request reductions in both the 2010-11 real market value and 2010-11 maximum assessed value of the subject property. As the party seeking affirmative relief, Plaintiffs bear the burden of proof and must establish their case by a preponderance of the evidence. ORS 305.427.[3] A preponderance of the evidence is "the more convincing or greater weight of evidence." Schaefer v. Dept. ofRev., TC No 4530 at 4 (July 12, 2001) (citing Feves v. Dept. ofRev., 4 OTR 302 (1971)). When the "evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof * * *." Reed v. Dept. of Rev., 310 Or 260, 265, 798 P2d 235 (1990). "Taxpayers must provide competence evidence of the real market value of their property." Woods v. Dept. of Rev.,16 OTR 56, 59 (2002) (citation omitted). Although "there is no presumption of assessment validity in Oregon, * * * ORS 305.427 requires that a taxpayer * * * must establish by competent evidence what the appropriate value of the property was as of the assessment date[.]" (Id.)
A. Real market value
Real market value is defined in ORS 308.205(a) as:
 "[T]he amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."
The assessment date for the 2010-11 tax year was January 1, 2010. ORS 308.007(2) and ORS 308.210. The Court has jurisdiction to determine the real market value of the subject property "based on the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412. *Page 8 
1. Approaches of valuation
Under ORS 308.205(2), "[r]eal market value in all cases shall be determined by methods and procedures in accordance with rules adopted by the Department of Revenue[.]" There are three methods of valuation that are used to determine real market value: 1) the cost approach, 2) the sales comparison approach, and 3) the income approach. Allen v.Dept of Rev., 17 OTR 248, 252 (2003); see also
OAR 150-308.205-(A)(2)(a) (stating that all three approaches must be considered, although all three approaches may not be applicable to the valuation of the subject property). Because the subject property is not an income producing property, the income approach is inapplicable. Neither party considered the cost approach.
2. Sales comparison approach
The sales comparison approach "may be used to value improved properties, vacant land, or land being considered as though vacant."Chambers Management Corp v. Lane County Assessor, TC-MD No 060354D at 6 (Apr 3, 2007) (citation omitted). OAR 150-308.205-(A)(2)(c) states:
 "In utilizing the sales comparison approach only actual market transactions of property comparable to the subject, or adjusted to be comparable, will be used. All transactions utilized in the sales comparison approach must be verified to ensure they reflect arms-length market transactions. When nontypical market conditions of sale are involved in a transaction (duress, death, foreclosures, interrelated corporations or persons, etc.) the transaction will not be used in the sales comparison approach unless market-based adjustments can be made for the nontypical market condition."
Plaintiffs identified several sales of comparable properties; however, none of the selected sales were "adjusted to be comparable to the subject" property as required by OAR 150-308.205-(A)(2)(c). Because Plaintiffs' sales were not adjusted for size, location, quality, and other differences from the subject property, this court cannot give weight to Plaintiffs' comparable *Page 9 
sales. Unadjusted sales prices are not helpful to the court in determining the real market value of the subject property on January 1, 2010.
By contrast, Totland adjusted his comparable sales for differences in square feet of living area, garage size, bathroom fixtures, and time from the January 1, 2010, assessment date. However, because Totland did not physically inspect the interior of the subject property, he was unaware of the condition of the subject property and did not make adjustments for the physical defects and deferred maintenance described by Mathers. Mathers testified persuasively that the condition of the subject property is inferior to that of Defendant's comparable sales.
The parties both considered the Melville property, which sold for $350,000 on January 29, 2010, to be a good comparable sale for the subject property. (Def's Ex C, page 2; Ptfs' Ex 1.) Totland adjusted the sale price of the Melville property upwards for "gross living area" and "garage/carport" to an adjusted sales price of $371,300. Gehrke testified that the Sargent property used by Totland as a comparable sale is superior to the subject property in several respects, including size, age, and condition. The court gives more weight to the adjusted sales price of the Melville property and less to the Sargent property.
Plaintiffs provided evidence suggesting that the condition of the subject property is inferior to the comparable sales presented by Defendant. Defendant did not make any adjustments for the condition of the subject property and Plaintiffs did not provide any evidence to determine the extent to which Defendant's comparable sales should be adjusted to reflect the inferior condition of the subject property. Thus, there is insufficient evidence for the court to determine an appropriate adjustment for the inferior condition of the subject property. *Page 10 
3. Real market value conclusion
In addition to the CMA provided by Gehrke, Plaintiffs relied upon a variety of analyses in which averages were derived from other comparable sales, to determine the subject property's real market value. Plaintiffs' analyses are not recognized "methods and procedures in accordance with rules adopted by the Department of Revenue." ORS 308.205(2). Thus, the court cannot give weight to Plaintiffs' additional analyses. Gehrke testified that he could reasonably sell the subject property for between $310,000 and $320,000; however, he did not state whether that estimate was as of the July 5, 2011, trial date, the January 1, 2010, assessment date, or another, undetermined date. That testimony is not, therefore, persuasive.
"A recent sale of the property in question is important in determining its market value. If the sale is a recent, voluntary, arm's length transaction between a buyer and seller, both of whom are knowledgeable and willing, then the sales price, while certainly not conclusive, is very persuasive of the market value." Kem v. Dept. of Rev.
(Kem), 267 Or 111, 114, 514 P2d 1335 (1973) (citation omitted). "The two important considerations are whether the sale was `recent' and whether it was `arm's-length.'" Kryl v. Lane County Assessor, TC-MD No 100192B at 4 (Mar 30, 2011) (citing Kem, 267 Or at 114). "There are many practical reasons why the sale of a property following foreclosure by the lender might involve an atypical market condition rendering the transaction of little or no value as an indication of market value." Id. Totland determined that Plaintiffs' purchase price for the subject property, adjusted for time, results in a real market value of $397,000 for the subject property on January 1, 2010. (See Def's Ex A at 3.) Totland testified that Plaintiffs' purchase of the subject property is not indicative of the real market value because it was a bank sale and not, therefore, "arm's-length." However, the time-adjusted purchase price of $397,000 falls within the middle of the range of adjusted comparable sales prices identified by *Page 11 
Totland, suggesting that Plaintiffs' purchase of the subject property was in line with the market. The court finds that the 2010-11 real market value of the subject property was $397,000.
B. Maximum Assessed Value and Uniformity
Plaintiffs request a reduction in 2010-11 maximum assessed value to $300,000, arguing that the assessed values of neighboring, similar and superior properties are less than the subject property; they "are around $310,000." (See Ptfs' Am Compl at 1-2.) In 1995, Oregon voters passed Measure 50, which amended the Oregon constitution establishing the concept of maximum assessed value. See Or Const, ArtXI, § 11(1)(a); Ellis v. Lorati (Ellis),14 OTR 525, 532-33 (1999) (describing the history of the adoption of Measure 50). For the 1997 tax year, maximum assessed value was computed as 90 percent of each property's 1995 real market value. Ellis,14 OTR at 533. For tax years after 1997, maximum assessed value increases by three percent annually, subject to certain exceptions not applicable to this case. Or Const, Art XI, § 11(1)(b); see also
ORS 308.146(1), (2).[4] After 1997, the maximum assessed value of new property is calculated in accordance with ORS 308.153. ORS 308.146(3). "Under Measure 50 and the statutes implementing it, there is no linkage between the [real market value] and [maximum assessed value]. Instead, each value is determined and one of the two, the lesser, becomes, in any given year, the assessed value * * * for the property."Gall v. Dept. of Rev., 17 OTR 268, 270 (2003).
Plaintiffs argue that their property taxes are higher than similar, neighboring properties and that their 2010-11 maximum assessed value should be reduced to bring it in line with the assessed values of neighboring properties. Article I, section 32 of the Oregon Constitution states that "all taxation shall be uniform on the same class of subjects within the territorial limits of the *Page 12 
authority levying the tax." However, subsection 18 of Article XI, section 11 (Measure 50) states that "Section 32, Article I * * * of this Constitution, shall not apply to this section." This court has previously addressed requests to reduce maximum assessed value based on uniformity:
 "The court recognizes that in one sense [maximum assessed value] is somewhat artificial or arbitrary. That is inherent in the overall scheme of section 11 [of the Oregon Constitution]. The concept may, over time, result in various degrees of nonuniformity in the property tax system. Section 11(18) contemplates this and excuses itself from complying with other constitutional provisions requiring uniformity, specifically Article IX, section 1, and Article I, section 32."
Ellis, 14 OTR at 535. "If the voting public approved a scheme that may result in non-uniform taxation, they implicitly accepted the notion of some degree of `unfairness.'" Taylor v. Clackamas CountyAssessor, 14 OTR 504, 511 (1999). There is no authority under the law to reduce Plaintiffs' maximum assessed value based on an argument for uniformity of taxation.
 III. CONCLUSION
After carefully considering the testimony and evidence, the court finds that the 2010-11 real market value of the subject property was $397,000. There is no support under the law for Plaintiffs' requested reduction in their 2010-11 maximum assessed value. Now, therefore, *Page 13 
IT IS DECIDED that the 2010-11 real market value of property, identified as Account 182566, is $397,000; and
IT IS FURTHER DECIDED that Plaintiffs' requested reduction in 2010-11 maximum assessed value is denied.
Dated this ___ day of November 2011.
If you want to appeal this Decision, file a Complaint in theRegular Division of the Oregon Tax Court, by mailing to:1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor,1241 State Street, Salem, OR.
 Your Complaint must be submitted within 60 days after the date ofthe Decision or this Decision becomes final and cannot be changed.
 This document was signed by Magistrate Pro Tempore Allison R.Boomer on November 30, 2011. The Court filed and entered this documenton November 30, 2011.
[1] Gerhke did not identify the date for his sales price estimate.
[2] Gerhke's CMA lists the sale date for comparable #4 as "02/02/10[.]" (Ptfs' Ex 1.) Plaintiffs' Exhibit 3 at page 2 identifies the sale date as "01-29-10[.]" Defendant lists the sale date for this property as "l/29/2010[.]" (Def's Ex C at 2.)
[3] All references to the Oregon Revised Statutes (ORS) and the Oregon Administrative Rules (OAR) are to 2009.
[4] Some exceptions to the three percent cap on annual increases to MAV are stated in ORS 308.146. *Page 1