IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

LEONARD YEE and YU JUAN MA,     )
                                         )
          Plaintiffs,            )     TC-MD 120105N
                                         )
          v.                     )
                                       )
CLACKAMAS COUNTY ASSESSOR,     )
                                       )
          Defendant.         )     **DECISION**

Plaintiffs appeal the real market value of property identified as Account 05009909

(subject property) for the 2011-12 tax year.  A trial was held in the Tax Courtroom on August 9,

2012.  Plaintiff Leonard Yee (Yee) appeared and testified on behalf of Plaintiffs.  Fred Dodd

(Dodd), Registered Appraiser, appeared and testified on behalf of Defendant.  Plaintiffs' Exhibit

1 and Defendant's Exhibit A were received without objection.

## I.  STATEMENT OF FACTS

The subject property is "a single family residence" with four bedrooms and two and one-

half bathrooms.  (Def's Ex A at 4.)  The subject property lot is 5,600 square feet and the subject

property improvement is 2,334 square feet.[1]  (*Id.* at 4, 7.)  Yee testified that the subject property

lot includes a 20 foot easement in the backyard for "septic."  Dodd testified that an easement is

simply a right of access and that Portland General Electric has many easements on properties in

Clackamas County.  He testified that it is unusual for Defendant to reduce the real market value

of a property due to an easement, with the exception of easements for power lines, which have a

/ / /

---

[1] Plaintiffs' Complaint asserts an improvement size of 2,142 square feet.  (Ptf's Compl at 4.)  This square footage is unsupported by evidence before the court and is contradicted by Plaintiffs' own appraisal excerpt.  (*See* Ptf's Ex 1 at 30 (stating dwelling size of 2,327 square feet).)

demonstrated negative effect on real market value. Dodd testified that he does not think that the easement on the subject property negatively affects its real market value.

Yee testified that he considers both the 2011-12 real market value of the subject property and his property tax burden to be "unfair" in comparison to neighboring properties. Yee testified that he purchased the subject property on March 30, 2005, for $276,295. (Ptfs' Ex 1 at 31.) He testified that the 2006-07 real market value of the subject property was $369,231, representing a 33.637 percent increase over his purchase price nine months earlier. (*See id.*) Yee calculated the 12 month percentage change to be 44.849 percent. (*Id.*) He testified that the real market values of three neighboring properties had increased by about 19 or 20 percent in that same 12-month period. (*Id.*) The court questioned the relevance of the 2006-07 tax year real market value to the present appeal concerning the 2011-12 tax year. Yee testified in response that the error in the 2006-07 real market value of the subject has been trended to subsequent tax years, resulting in an overstated real market value for the 2011-12 tax year.

The 2011-12 roll real market value of the subject property was $292,172. (Ptfs' Compl at 2.) The county board of property tax appeals (board) reduced the 2011-12 real market value to $276,000. (*Id.*) The 2011-12 maximum assessed value of the subject property is $255,428. (*Id.*) Yee requests a 2011-12 real market value of $241,378 for the subject property. (Ptfs' Ex 1 at 28.) He accepts the 2011-12 improvements real market value of $154,978, ordered by the board. (*See id.*) The 2011-12 land real market value of the subject property set by Defendant and sustained by the board is $121,022. (Ptfs' Compl at 2.) Yee requests a reduction in the 2011-12 land real market value to $86,400. (Ptfs' Ex 1 at 28.) His request is based on the $80,000 "opinion of site value" stated in a November 8, 2011, appraisal of the subject property by Will

Snyder of RELS Valuation for Wells Fargo Bank.[2]  (*Id.* at 28-30.)  Yee calculated a 2011-12 land real market value of $86,400 based on "the house market drop 8% in 2010, my RMV land value was $80,000 x 108% = $86,400."  (*Id.* at 28.)

Dodd testified that the subject property was built in 2005 and was new property for the 2006-07 tax year; thus, the real market value of the subject property improvements for the 2006-07 tax year was used by Defendant to determine the 2006-07 maximum assessed value, as required by "Measure 50."  Dodd testified, and Yee confirmed, that Plaintiffs did not appeal the real market value of the subject property for the 2006-07 tax year or for any subsequent tax year until the 2011-12 tax year.  Dodd testified that it is "unfortunate" that Plaintiffs did not appeal the 2006-07 real market value of the subject property because Defendant may have agreed to a reduction in the 2006-07 real market value based on Plaintiffs' March 2005 purchase price.  Dodd testified that neither Defendant nor the court has any authority to change the 2006-07 real market value or maximum assessed value of the subject property.

Dodd testified that the subject property is located in a very homogenous subdivision in Clackamas County.  He testified that he selected three comparable sales from the same neighborhood as the subject property.  (*See* Def's Ex A at 7.)  Dodd's comparable sales are located two, three, and four blocks from the subject property.  (*Id.*)  Dodd's comparable sales occurred in January, June, and November 2010.  (*Id.*)  He made adjustments for quality and improvement size (main floor, upper floor, and garage).  (*Id.*)  Dodd identified other differences for which adjustments may necessary, including lot size, year built, condition, bathrooms, "heat/cool," and fireplace, but determined that none of his comparable sales required adjustment for those elements.  (*See id.*)  Dodd determined adjusted sale prices ranging from $254,680 to

---

[2] Plaintiffs provided a two page excerpt from the appraisal report.  Will Snyder did not testify at trial.

$270,440 and concluded a real market value of $265,000 for the subject property as of January 1, 2011. (*Id.* at 6, 7.)

## II. ANALYSIS

The issue before the court is the real market value of the subject property for the 2011-12 tax year. "Real market value is the standard used throughout the ad valorem statutes except for special assessments." *Richardson v. Clackamas County Assessor* (*Richardson*), TC-MD No 020869D, WL 21263620 at *2 (Mar 26, 2003) (citing *Gangle v. Dept. of Rev.*, 13 OTR 343, 345 (1995)). Real market value is defined in ORS 308.205(1), which states:

> "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's length transaction occurring as of the assessment date for the tax year."[3]

The assessment date for the 2011-12 tax year was January 1, 2011. ORS 308.007; ORS 308.210.

The real market value of property "shall be determined by methods and procedures in accordance with rules adopted by the Department of Revenue." ORS 308.205(2). The three approaches of value that must be considered are: (1) the cost approach; (2) the sales comparison approach; and (3) the income approach. OAR 150-308.205-(A)(2)(a). Although all three approaches must be considered, all three approaches may not be applicable in a given case. *Id.* The sales comparison approach is preferred where there is a significant ascertainable market for similar property. *Ward v. Dept. of Revenue*, 293 Or 506, 511, 650 P2d 923 (1982) (citations omitted). The court looks at arm's-length sales transactions of similar property to determine a correct real market value. *Richardson*, TC-MD No 020869D. The value of property is

/ / /

---

[3] All references to the Oregon Revised Statutes (ORS) and to the Oregon Administrative Rules (OAR) are to 2009.

ultimately a question of fact. *Chart Development Corp. v. Dept. of Rev.*, 16 OTR 9, 11 (2001) (citation omitted).

Plaintiffs have the burden of proof and must establish their case by a preponderance of the evidence. ORS 305.427. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof." *Reed v. Dept. of Rev.,* 310 Or 260, 265, 798 P2d 235 (1990). "[I]t is not enough for a taxpayer to criticize a county's position. Taxpayers must provide competent evidence of the [real market value] of their property." *Poddar v. Dept. of Rev.*, 18 OTR 324, 332 (2005) (citations omitted). Competent evidence includes "testimony from licensed professionals such as appraisers, real estate agents[,] and licensed brokers." *Hausler v. Multnomah County Assessor*, TC-MD No 110509D, WL 5560673 at *4 (Nov 15, 2011). "[T]he court has jurisdiction to determine the real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412.

Plaintiffs did not offer evidence under any of the three approaches of value, relying instead on the March 2005 sale of the subject property and on the roll values of neighboring properties. Although "[a] *recent* sale of the property in question is important in determining its market value" and can be "very persuasive," Plaintiffs' March 2005 purchase of the subject property was not recent as of January 1, 2011. *Kem v. Dept. of Rev.,* 267 Or 111, 114, 514 P2d 1335 (1973) (emphasis added). Plaintiffs have therefore failed to provide persuasive evidence of the subject property's 2011-12 real market value.

Nevertheless, even though the burden has not shifted under ORS 305.427, the court has jurisdiction to determine the "real market value or correct valuation on the basis of the evidence

before the court, without regard to the values pleaded by the parties." ORS 305.412. Dodd presented a persuasive analysis under the sales comparison approach that the 2011-12 real market value of the subject property is in the range of approximately $254,000 to $270,000. Dodd determined the 2011-12 real market value of the subject property to be $265,000 and the court accepts his determination based on the evidence presented.[4]

Plaintiffs argue that the 2006-07 real market value of the subject property was too high and has resulted in an overstated real market value for each subsequent tax year as well as a greater tax burden than neighboring properties. Unfortunately, Plaintiffs did not appeal the 2006-07 real market value of the subject property to either the board or to this court. The time for Plaintiffs' to appeal the 2006-07 real market value of the subject property has long passed and the 2006-07 real market value of the subject property is beyond the jurisdiction of this court. *Cf., e.g.,* ORS 305.288 (authorizing the court to order a change to the assessment and tax roll "for the current tax year or for either of the two tax years immediately preceding the current tax year"). Plaintiffs acknowledge that and do not challenge the 2006-07 real market value of the subject property.

Plaintiffs argue that the property tax burden associated with the subject property, relative to neighboring properties, is unfair. Plaintiffs attribute what they consider to be an excessive property tax burden to the overstated 2006-07 real market value. Plaintiffs' property tax burden is based primarily on the assessed value of the subject property. Assessed value is defined by statute as the lesser of the property's real market value or maximum assessed value. ORS 308.146(2). Plaintiffs' 2011-12 tax year maximum assessed value is less than the 2010-11 real

///

---

[4] On August 15, 2012, Dodd filed a letter with the court stating that Plaintiffs would receive a tax refund under Measure 5 if the total real market value of the subject property was lowered to $265,000.

market value, so Plaintiffs' assessed value is the maximum assessed value of $255,428. Thus, the court understands Plaintiffs' challenge to be to the 2011-12 maximum assessed value.

Dodd testified that the subject property improvement was new as of January 1, 2006, thus the 2006-07 real market value of the subject property improvement resulted in an increase in the 2006-07 maximum assessed value of the subject property beyond the typical three percent increase. *See* Or Const, Art XI, § 11(1)(c); ORS 308.146(3)(a).[5] Dodd testified that, since the 2006-07 tax year, the maximum assessed value of the subject property has increased three percent each year in accordance with Measure 50. He explained that any lack of "uniformity" in Plaintiffs' relative property tax burden is likely due to the fact that Plaintiffs failed to challenge the 2006-07 real market value of the subject property.

As discussed by Dodd at trial, the lack of uniformity between the maximum assessed value of the subject property and neighboring properties is likely the result of Measure 50. In 1995, Oregon voters passed Measure 50, which established the concept of maximum assessed value by amending the Oregon Constitution. *See* Or Const, Art XI, § 11(1)(a); *Ellis v. Lorati* (*Ellis*), 14 OTR 525, 532-33 (1999) (describing the history of the adoption of Measure 50). For the 1997 tax year, maximum assessed value was computed as 90 percent of each property's 1995 real market value. Or Const, Art XI, § 11(1)(a). For tax years after 1997, maximum assessed value typically increases by three percent annually. *Id*., § 11(1)(b); *see also* ORS 308.146(1).[6] After 1997, the maximum assessed value of new property is calculated in accordance with ORS 308.153. *See* ORS 308.146(3). "Under Measure 50 and the statutes implementing it, there is no linkage between the [real market value] and [the maximum assessed value]. Instead, each value

---

[5] Under Measure 50 the maximum assessed value of a property will generally increase no more than three percent per year after 1997. New property or new improvements result in an increase to maximum assessed value beyond the three percent otherwise allowed. ORS 308.153(1).

[6] Some exceptions to the three percent cap on annual increases to MAV are stated in ORS 308.146.

is determined and one of the two, the lesser, becomes, in any given year, the assessed value * * * for the property." *Gall v. Dept. of Rev.*, 17 OTR 268, 270 (2003).

Article I, section 32, of the Oregon Constitution states that "all taxation shall be uniform on the same class of subjects within the territorial limits of the authority levying the tax." However, subsection (18) of Article XI, section 11 (Measure 50), states that "Section 32, Article I * * * of this Constitution[] shall not apply to this section." This court has previously addressed requests for value reductions based on uniformity:

> "The court recognizes that in one sense [maximum assessed value] is somewhat artificial or arbitrary. That is inherent in the overall scheme of section 11. The concept may, over time, result in various degrees of nonuniformity in the property tax system. Section 11(18) contemplates this and excuses itself from complying with other constitutional provisions requiring uniformity, specifically Article IX, section 1, and Article I, section 32."

*Ellis*, 14 OTR at 535. "If the voting public approved a scheme that may result in nonuniform taxation, then they implicitly accepted the notion of some degree of 'unfairness.'" *Taylor v. Clackamas County Assessor*, 14 OTR 504, 511 (1999). There is no basis under the law to reduce the 2011-12 maximum assessed value of the subject property based on an argument for uniformity of taxation and the court is without authority to adjust the 2011-12 maximum assessed value of the subject property. Plaintiffs have failed to establish that the 2011-12 maximum assessed value was incorrectly calculated.

## III. CONCLUSION

Plaintiffs failed to meet the burden of proof with respect to their requested reduction in the subject property's 2011-12 real market value, and no error has been shown in the calculation of its 2011-12 maximum assessed value. However, Dodd presented persuasive evidence that the 2011-12 real market value of the subject property was $265,000. Now, therefore,

/ / /

IT IS THE DECISION OF THIS COURT that the 2011-12 real market value of property identified as Account 05009909 was $265,000

Dated this ____ day of October 2012.

_____
ALLISON R. BOOMER
MAGISTRATE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within <u>60</u> days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This document was signed by Magistrate Allison R. Boomer on October 10, 2012. The Court filed and entered this document on October 10, 2012.*