220 December 20, 2018 No. 11

IN THE OREGON TAX COURT
REGULAR DIVISION

Diane R. GRAY,
*Plaintiff,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant.*

(TC 5324)

Plaintiff challenged the Linn County Assessor's assessment of Plaintiff's property as to tax years 2014-15, 2015-16, and 2016-17 at the Magistrate Division, which decided in the assessor's favor. Plaintiff appealed to the Regular Division. Defendant filed a motion to dismiss Plaintiff's complaint as to tax years 2014-15 and 2015-16 for lack of subject matter jurisdiction and failure to state ultimate facts sufficient to constitute a claim. The court granted Defendant's motion, having held that, although the court does have subject matter jurisdiction, Plaintiff failed to request that the court change the property's real market value on the tax roll by at least 20 percent. Plaintiff alleged a difference in value exceeding the 20 percent threshold only as to the improvements to the land, not the value of the improvements and the land together.

Submitted on Defendant's Motion to Dismiss.

Diane R. Gray, Plaintiff, filed a response *pro se.*

Nate Carter, Assistant Attorney General, Department of Justice, Salem, filed the motion for Defendant.

Decision for Defendant rendered December 20, 2018.

**ROBERT T. MANICKE, Judge.**

## I. INTRODUCTION

This matter is before the court on the remainder of Defendant Department of Revenue's (the department's) motion to dismiss Plaintiff Diane Gray's (taxpayer's) complaint as to tax years 2014-15 and 2015-16 for lack of subject matter jurisdiction and failure to state ultimate facts sufficient to constitute a claim.[1] The court previously denied the department's motion to strike the complaint for failure to properly sign it. *Gray v. Dept. of Rev.*, TC 5324 (May 30, 2018).

---

[1] Taxpayer's complaint also contains a claim regarding tax year 2016-17. The department did not move to dismiss taxpayer's complaint as to that year.

## II.  FACTS

The record that the court considers on a motion to dismiss depends on the basis asserted for dismissal. *See* Tax Court Rule (TCR) 21 A. On a motion to dismiss for failure to state ultimate facts sufficient to constitute a claim, the court's review is limited to the allegations, accepted as true, made in the complaint. *Work v. Dept. of Rev.*, 22 OTR 396, 397-98, *aff'd*, 363 Or 745, 429 P3d 375 (2018) (quoting *Douglas County v. Smith*, 18 OTR 450, 453 (2006)). On a motion to dismiss for lack of subject matter jurisdiction, the court also may consider "matters outside the pleading, including affidavits, declarations and other evidence." *Work*, 22 OTR at 398. Taxpayer's complaint alleges the following:

"[Taxpayer] is owner of certain property in Linn County, Oregon, identified by the assessor's office as Account number 219358." "[Taxpayer] appealed an act, omission, order, or determination of a county board of property tax appeals, a county assessor, other county official, or the Department of Revenue for such property to the Magistrate Division of the Oregon Tax Court." "The Magistrate's decision is in error for the reasons stated below."

The amounts discussed in the remaining recitation of facts are illustrated in tables in the Analysis section below. For tax year 2014-15, taxpayer challenges the real market value (RMV)[2] of "all structures" on her property. Those structures include a "residential two-story home" and a "pole barn." Taxpayer alleges the RMV for all structures is $78,860. The RMV for all structures as listed on the tax roll is $147,630, a difference of $68,770 or approximately 47 percent.[3] Taxpayer claims relief for tax year 2014-15 under ORS 305.288(1)[4] "based on the evidence the

---

[2] "Real market value" means "the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year." ORS 308.205(1).

[3] Taxpayer also mentions a "requested" RMV for the structures of $112,169. It is unclear to the court whether this reference is to a value Taxpayer requested at some earlier time. The court interprets Taxpayer's complaint as requesting an RMV of $78,860.

[4] Unless otherwise noted or the context dictates otherwise, all references to the Oregon Revised Statues (ORS) are to the 2013 and 2015 editions.

tax roll RMV was overstated by 20%." Taxpayer also alleges that the land RMV for her property is $104,270, but her complaint does not inform the court of the land RMV on the tax roll, or whether she requests a value for the land that is different from the roll value. Accordingly, without looking beyond the complaint, the court cannot determine the percentage difference between the RMV on the tax roll for the entire property and the RMV taxpayer requests for the entire property.[5]

For tax year 2015-16, taxpayer challenges the RMV of both the land and improvements on her property. As to improvements, taxpayer alleges the tax roll RMV of $163,340 should be reduced to $103,935, a difference of $59,405 or approximately 36 percent. As to land, taxpayer alleges the RMV should be $105,626. Because taxpayer alleges that the RMV of the entire property on the tax roll is $226,720, the court can deduce that taxpayer alleges that the land RMV on the tax roll is $63,380.[6] Accordingly, taxpayer seeks an *increase* in the RMV of the land. Just as with tax year 2014-15, taxpayer claims relief for tax year 2015-16 under ORS 305.288(1) "based on the evidence the tax roll RMV was overstated by 20%." Although the complaint requests a change in both land and improvement values, the court interprets taxpayer's complaint as seeking relief based on the requested change in value of the improvements alone.[7]

## III.   ISSUE

Under ORS 305.288(1)(b), must the court apply the "20 Percent Correction Test" (defined below) using the total real market value of all associated real property (in this case, land plus improvements), or using the separate value of each component that the party seeks to appeal (in this case, improvements alone)?

---

[5] The department states in its motion that the land value as stated on the tax roll is $59,400.

[6] ($226,720 – $163,340 = $63,380).

[7] Taxpayer's requested change to the RMV of the entire property would result in a difference of approximately 7.6 percent (($226,720 – $209,561) / $226,720).

# IV.   ANALYSIS

Relief under ORS 305.288(1) is a remedy for over-valuation of property used primarily as a dwelling. The relief is "in addition" to other remedies (ORS 305.288(6)), but taxpayer's complaint requests relief only under ORS 305.288(1), and there is no basis to conclude that tax-payer has pursued any other route to relief as to tax years 2014-15 and 2015-16. *See Work*, 22 OTR at 404-05 (summa-rizing the four potential sources of relief). The statute pro-vides, in relevant part:

> "The tax court shall order a change or correction appli-cable to a *separate assessment of property* to the assessment and tax roll for the current tax year or for either of the two tax years immediately preceding the current tax year, or for any or all of those tax years, if all of the following condi-tions exist:

> "(a)   For the tax year to which the change or correc-tion is applicable, *the property* was or is used primarily as a dwelling (or is vacant) and was and is a single-family dwell-ing, a multifamily dwelling of not more than four units, a condominium unit, a manufactured structure or a floating home.

> "(b)   The change or correction requested is a change in value for *the property* for the tax year and it is asserted in the request and determined by the tax court that the dif-ference between the real market value of *the property* for the tax year and the real market value on the assessment and tax roll for the tax year is equal to or greater than 20 percent."

ORS 305.288(1) (emphases added). The court must correct "a separate assessment of property" for the current year, either of the prior two years, or any or all of those years, if two conditions are met. First, "the property" must meet the dwelling requirements. ORS 305.288(1)(a). Second, the change in value must be equal to or greater than 20 percent of "the property's" RMV as shown on the assessment roll (the 20 Percent Correction Test). ORS 305.288(1)(b).

This case requires the court to interpret the phrase "the property" as used in the 20 Percent Correction Test. Taxpayer argues that "the property" can mean any one of

three things whose value is listed on the assessment roll, (1) *land only*: the "land, excluding all buildings, structures, improvement and timber thereon," (2) *improvements only*: the aggregate of all "buildings, structures and improvements thereon," or (3) *land + improvements*: the "parcel of real property assessed." *See* ORS 308.215(1)(a)(E), (F), (I). Taxpayer cites a 2001 decision from the Magistrate Division that reasoned that, because the legislature has required the assessor to determine these three values and record them on the roll, and because case law allows a party to appeal the value of land or improvements separately, the 20 Percent Correction Test applies to land or improvements separately. *See Ferschweiler v. Clackamas County Assessor*, 16 OTR-MD 429, 434 (2001).

The department argues that taxpayer is focusing on the wrong statute. Instead of considering the statute that tells the assessor what values to list on the tax roll, the court should base its decision on the statute that allows taxpayer's appeal only if the 20 Percent Correction Test is satisfied: ORS 305.288(1). That statute requires "the property" to be primarily used as a "dwelling." According to the department, the only way to compare the value of "the property" as a dwelling with the value of "the property" on the assessment roll is to limit the meaning of "the property" to the land and improvements together.[8]

The parties' calculations for each tax year are expressed in the tables below as a ratio or percentage, with the numerator representing the requested change in RMV of the property, and the denominator representing the RMV of the property as shown on the assessment roll. To resolve the department's motion, the court must decide whether taxpayer has correctly limited her calculation of the value of "the property" to the value of the improvements, which for each of tax years 2014-15 and 2015-16 would result in a percentage change exceeding the threshold prescribed by the 20 Percent Correction Test.

---

[8] The department defines a dwelling to mean either the land plus all improvements, or just the residential structure. Because individual structures are not listed on the assessment roll, the department argues that the "dwelling"—and therefore "the property"—must be the land plus all improvements. The court discusses each party's arguments at the end of this order.

| Tax Year 2014-15 | Taxpayer's Position (Improvements Only) | Department's Position (Land + Improvements) |
|---|---|---|
| RMV Change Requested | $68,770[9] | $23,900[10] |
| RMV on Tax Roll | $147,630 | $207,030[11] |
| Percentage Change (Must exceed 20% under 20 Percent Correction Test) | 46.58% | 11.54% |
| Tax Year 2015-16 | Taxpayer's Position (Improvements Only) | Department's Position (Land + Improvements) |
| RMV Change Requested | $59,405[12] | $17,159[13] |
| RMV on Tax Roll | $163,340 | $226,720 |
| Percentage Change (Must exceed 20% under 20 Percent Correction Test) | 36.37% | 7.57% |

The department asks the court to dismiss taxpayer's claims as to tax years 2014-15 and 2015-16, claiming that the requirements of ORS 305.288(1)(b) were not met for those

---

[9] This number is calculated by subtracting the requested value of the improvements from the value of the improvements shown on the assessment roll for tax year 2014-15 ($147,630 – $78,860 = $68,770).

[10] This number, which is based on the department's allegations, is illustrative only, as taxpayer's complaint does not supply an RMV on the roll for the land for 2014-15. The number is calculated by subtracting the requested value of the land and improvements from the value of the land and improvements shown on the assessment roll for tax year 2014-15 ($207,030 – $183,130 = $23,900).

[11] This number, which is based on the department's allegations, is illustrative only, as taxpayer's complaint does not supply an RMV on the roll for the land for 2014-15.

[12] This number is calculated by subtracting the requested value of the improvements on taxpayer's property from the value of the improvements on the assessment roll for tax year 2015-16 ($163,340 – $103,935 = $59,405).

[13] This number is calculated by subtracting the requested value of the land and improvements from the value of the land and improvements on the assessment roll for tax year 2015-16 ($226,720 – $209,561 = $17,159).

years. The department gives two independent legal theories, citing this court's recent decision in *Work*, which has recently been affirmed on appeal to the Oregon Supreme Court.[14] The department asserts, first, that the court lacks subject matter jurisdiction (TCR 21 A(1)), and second, that taxpayer failed to state ultimate facts sufficient to constitute a claim (TCR 21 A(8)). The department explains:

> "The Tax Court recently has stated, in *Work v. Dept. of Rev.*, [22 OTR 396 (2017),] that motions to dismiss for failure to satisfy the requirements of ORS 305.275 and 305.288 are properly characterized as motions to dismiss for failure to state a claim, rather than motions to dismiss for lack of subject matter jurisdiction, because the Tax Court generally has jurisdiction over any claims arising under the tax laws of this state under ORS 305.410. *See Work*, [22 OTR at 402-03]. *Work* presently is under appeal. However, for purposes of this motion, it is not necessary to argue the question presented by *Work*, as the Department moves under both TCR 21 A(1) and (8) with respect to the 2014-15 and 2015-16 tax years.

A.   *Subject Matter Jurisdiction*

The department first argues that the court lacks subject matter jurisdiction because the record to date fails to show that the 20 Percent Correction Test is satisfied. The court applies its decision on subject matter jurisdiction in *Work*, which the Supreme Court did not disturb on appeal. 22 OTR at 402-03.

The department does not dispute that taxpayer's property tax burden would be lower if the court were to grant her request to reduce the property's RMV. *See Sanok v. Grimes*, 294 Or 684, 697, 662 P2d 693 (1983) (stating that "questions which must be resolved in order to decide taxability or the amount of tax do arise under the tax laws" and are within the Tax Court's jurisdiction). Therefore, the court has subject matter jurisdiction over taxpayer's claims, even if the court ultimately disagrees. The court denies the department's motion to dismiss to the extent it is based on lack of subject matter jurisdiction (TCR 21 A(1)).

---

[14] *Work v. Dept. of Rev.*, 363 Or 745, 429 P3d 375 (2018).

B.  *Failure To State Ultimate Facts Sufficient To Constitute a Claim*

The court now considers the department's second argument, that taxpayer has failed to state ultimate facts sufficient to constitute a claim (TCR 21 A(8)). The tables above show that, if taxpayer's interpretation of "the property" in ORS 305.288(1)(b) is correct, she will have "asserted" a change in RMV satisfying the 20 Percent Correction Test and she will be entitled to pursue relief as to both 2014-15 and 2015-16. But if the department's interpretation is correct, taxpayer will have failed to assert a change satisfying the 20 Percent Correction Test, and the court will be required to dismiss her appeals as to those two years without ordering a change to the roll for either year. Thus, the court will resolve the department's motion as to tax years 2014-15 and 2015-16 based on the department's argument that taxpayer has failed to state ultimate facts sufficient to constitute a claim (TCR 21 A(8)).

C.  *Substantive Analysis: Defining "the Property" as Used in ORS 305.288(1)(b)*

When discerning the meaning of the statutory term "the property" for purposes of the 20 Percent Correction Test, the court considers the text, context, and legislative history of ORS 305.288(1). *See State v. Gaines*, 346 Or 160, 206 P3d 1042 (2009). As explained below, the court concludes that "the property" in ORS 305.288(1)(b) and its antecedent "a separate assessment of property" refer to the land plus the improvements because real property (except in circumstances not applicable here) is *assessed* as a whole parcel that includes the land and any improvements. Taxpayer relies in part on a 2001 Magistrate Division decision that supports her position that "the property" refers to either land or improvements separately because the value of each of those items is listed separately on the assessment roll. In addition, the court has discovered language in nonprecedential prior opinions of the Regular Division that also would support taxpayer's position. Because the court now overturns those cases to the extent that they conflict with today's order governing application of the 20 Percent Correction Test, the court sets forth its reasoning at some length.

1.  *Text and Context*

As its first step, the court determines that the phrase "the property" in ORS 305.288(1)(b) refers to its antecedent "a separate assessment of property" earlier in the same subsection. ORS 305.288(1), logically and grammatically, is a single sentence that starts with an overall direction to this court and ends with two enumerated tests in paragraphs (a) (the "dwelling" test) and (b) (the "20 Percent Correction Test"). In each of paragraphs (a) and (b), the antecedent can only be the same "property" referred to in subsection (1), within the phrase "separate assessment of property." Accordingly, in order to follow the direction in ORS 305.288(1)(b) to order a change or correction, the court must determine the difference between the actual RMV and the RMV on the roll *for the property that is the subject of a separate assessment of property.* The court first will examine the legislature's use of the complete phrase "separate assessment of property," and then analyze the terms "property" and "assessment."

a.  The legislature uses the phrase "separate assessment of property" in contrast to actions taken on a *class* of property.

To find the meaning of "separate assessment of property," the court first looks at other places in Oregon tax law where the legislature has used the same phrase. *See Comcast Corp. v. Dept. of Rev.*, 356 Or 282, 296-97, 337 P3d 768 (2014) (explaining need to analyze "data transmission services" as a technical phrase). This approach reveals that the legislature uses "separate assessment of property" to distinguish actions of an assessor or the department with respect to a discrete item of property from actions with respect to an entire *class* or other grouping of property.

The legislature used the phrase in ORS 306.115, which invests in the department general supervision and control over the system of property taxation throughout the state. Subsection (2) of that statute gives the department broad authority to order a change to the tax roll for "all real or personal property *of the same class or in the same area,*" so long as the change is for the current tax year only and

the department issues the order no later than October 15. ORS 306.115(2) (emphasis added); *see generally* OAR 150-308-0310(8) (listing department's description of property "classes"). By comparison, the next subsection authorizes the department (in its discretion) to order a change to the tax roll for a "separate assessment of property" not only for the current year but also for either of the two tax years immediately preceding the current year, in order to "conform the roll to applicable law." ORS 306.115(3).

Another statute distinguishing a separate assessment from a class of property is the so-called "adjudicated value" statute, which applies after a property tax valuation dispute is resolved by this court, the department, or the local board of property tax appeals. ORS 309.115 generally freezes, for up to five years, the adjudicated real market value of a "separate assessment of property." As an exception, however, the statute allows an adjustment for "[a]nnual trending or indexing applied to all property of the *same property class in the county*, or within clearly defined areas of the county under this chapter." ORS 309.115(2)(a) (emphasis added).

Both ORS 306.115 and ORS 309.115 tend to undermine any notion that "separate assessment of property" refers to the separate listing of values for land and improvements.

> b. Neither the plain meaning of "property" nor the statutory definition of "real property" answers the question.

The court next considers the plain meaning, and any statutory definition, of portions of the phrase, starting with the term "property." *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993). No statute defines "property" for purposes of ORS 305.288(1).[15]

---

[15] ORS 308.142(1) generally defines "property" as "[a]ll property included within a single property tax account," a definition consistent with this court's interpretation of "separate assessment of property" in this case. However, the definition in ORS 308.142(1) is for purposes of determining whether the assessed value of property exceeds the property's maximum assessed value permitted under Measure 50 (Or Const, Art XI, § 11). The court assigns no weight to the definition in ORS 308.142(1).

The plain meaning, as found in the dictionary, is unhelpful because it encompasses any "real estate" and thus all three contenders (land, improvements, or land + improvements).[16] *See Webster's Third New Int'l Dictionary* 1818 (unabridged ed 2002). The statutes do define "real property," but with a similarly unhelpful result. ORS 307.010(1)(b), which the legislature has declared applicable to all "property tax laws in this state," provides:

'"Real property' includes:

"(A)   The land itself, above or under water;

"(B)   All buildings, structures, improvements, machinery, equipment or fixtures erected upon, above or affixed to the land;

"(C)   All mines, minerals, quarries and trees in, under or upon the land;

"(D)   All water rights and water powers and all other rights and privileges in any way appertaining to the land; or

"(E)   Any estate, right, title or interest whatever in the land or real property, less than the fee simple."

ORS 307.010(1)(b). The connector "or" allows the possibility that the term "real property" may refer to fewer than all of the rights listed in ORS 307.010(1)(b), or it may refer to all of them together, including land, improvements, or both. Application of this definition to ORS 305.288(1) requires additional context.

> c. "Separate *assessment*" involves more than separate *valuation*.

The court finds it significant that ORS 305.288(1) refers to a separate "assessment" of property, as opposed to separate "valuation" of property. Whatever else may be said about the undefined term "assessment" in Oregon

---

[16] Neither party has asserted that any personal property is at issue here, and personal property in any event is subject to a number of distinct rules governing reporting of value, assessment, and collection of tax. *See, e.g.*, ORS 308.290 (requiring, among other things, annual tax returns reporting the RMV of taxable personal property such as business personal property).

property tax law,[17] the term includes, but also may mean more than, "valuation."[18] It is true that valuation of property, as of each January 1, is a key step in the annual task of assessment; hence the general requirement in ORS 308.210 that the assessor "assess the *value* of all taxable property within the county." ORS 308.210(1) (emphasis added). However, the same statute makes it clear that the assessor's overall task is much larger than valuation: Preparing the "full and complete record of the assessment" that constitutes the "assessment roll" requires the assessor to engage in substantial legwork and decision-making behind the scenes and throughout the year.[19] Paragraph (1)(a) of ORS 308.215 requires the assessor to create and maintain a categorization system that includes "account numbers," "code areas," and "property classes." *See* ORS 308.215(1)(a)(B), (C). The assessor also must gather and maintain specific information such as ownership, acreage, and description by metes and bounds or otherwise. *See* ORS 308.215(1)(a)(A), (B), (D). Other statutes require the assessor to update the roll to track events such as divisions, combinations, and transfers, as well as changes to the boundaries of taxing districts. *See* ORS 308.210(3)-(5); ORS 308.225. Finally, the assessor must make and record determinations about the property's eligibility for any of Oregon's programs of special assessment for farm, timber, and other particular uses,[20] or

---

[17] *See, e.g.*, *Northwest Natural Gas Co. v. Dept. of Rev.*, 347 Or 536, 553, 226 P3d 28 (2010) (declining to "engage in the complicated and nuanced analysis of whether and when 'assessment' is 'taxation'").

[18] The dictionary definition of "assessment" runs the gamut, covering "a *valuation* of property usu[ally] for the purpose of taxation," "a valuation *and an adjudging of the sum to be levied* on property," "a *specific charge or tax* determined upon by assessing," and "the *entire plan or scheme* fixed upon for charging or taxing." *Webster's Third New Int'l Dictionary* 131 (unabridged ed 2002) (emphases added).

[19] *See Multnomah County Assessor v. Portland Devel. Comm.*, 20 OTR 395, 396-97 (2011) (describing the "annual and inexorable process that makes possible the proper administration of the property tax system and the collection of revenue on which so many local governments depend").

[20] *See, e.g.*, ORS 308A.083 (requiring assessor to record on the roll "potential additional tax liability" that will apply if property is disqualified from exclusive or nonexclusive farm use zone special assessment); ORS 308A.119 (requiring assessor to abate deferred additional taxes, subject to certain conditions, for disqualified nonexclusive farm use zone farmland); ORS 308A.706(3) (requiring the assessor to continue the "potential additional tax liability" notation on the rolls for property that has been disqualified from farmland, forestland, and other

programs of full or partial exemption from tax.[21] Thus, by referring to property subject to "separate *assessment*" when it could have referred to separate valuation, the legislature signaled at least the possibility that it did not intend that the 20 Percent Correction Test apply to each separately *valued* component of real property.

(1) The "property" that is subject to "separate assessment" is a "parcel."

The foregoing analysis still does not answer whether the 20 Percent Correction Test applies to the value of land and improvements separately, or only to the aggregate value of land and improvements. The answer lies in the text and context of the first sentence of ORS 305.288(1), which directs this court to order a change or correction "to the assessment and tax roll" if the requisite 20 percent value difference is present. Preparing the annual assessment roll, certifying it, and delivering it to the county tax collector before the start of the annual billing cycle in late October is the ultimate job of each county assessor.[22] The content of the roll, as prescribed in ORS 308.215 and discussed in part above, must include numerous data points, including the identity of the owner, the legal description, the acreage, the RMV of the land alone, the RMV of the improvements alone, and the "total" RMV, assessed value, and maximum assessed value. *See* ORS 308.215(1)(a)(A)‑(I).[23] For present

---

special assessment programs but additional taxes have been deferred); ORS 308A.312 (requiring the assessor to add potential additional tax notation on the tax roll for "open space lands" special assessment program); ORS 308A.362(6) (similar for "riparian habitat exemption" program); ORS 308A.427(2) (similar for "wildlife habitat special assessment"); ORS 308A.459(4) (similar for "conservation easement special assessment").

[21] *See, e.g.*, ORS 307.115(3) (assessor must add to the roll property disqualified from nonprofit parks exemption); ORS 307.157(3) (notation of potential additional taxes for certain property transferred out of cemetery use); 2017 Or Laws 2017, ch 537, § 3(4) (similar for property exempt under seismic retrofitting program); *see also* ORS 307.035 (requiring assessor to "publish" summary valuations of all property that is subject to certain exemptions).

[22] *See* ORS 311.115 (requiring delivery of the roll). The offices of assessor and collector are distinct but may be occupied by the same individual. *See* ORS 311.020.

[23] The terms "assessed value" and "maximum assessed value" are relevant only for purposes of Measure 50 and are not discussed further in this order.

purposes, the critical feature of ORS 308.215 is that the assessor must record each such data point "[f]or each *parcel* of real property." ORS 308.215(1)(a) (emphasis added). Thus, for real property, the entire roll is organized by parcel. *See Oakmont, LLC v. Dept. of Rev.*, 359 Or 779, 781, 377 P3d 523 (2016) ("The county assessor must determine the real market value of each parcel of property 'as of' January 1 of the assessment year.").

>        (2) A "parcel" comprises a "tract of land" and
>            includes any improvements.

What, then, is a "parcel of real property"? No statute defines the phrase for this purpose. However, the plain meaning of "parcel" is a "tract or plot of *land*." *Webster's* at 1640 (emphasis added). This indicates that the legislature viewed each tract of land as the primary unit of real property to record on the assessment roll, and that it intended the various subparagraphs in ORS 308.215(1)(a) as attributes to be noted as part of the record for each tract. Among those attributes are the RMV of any improvements on the tract of land (subparagraph (F)), the RMV of the tract of land itself (subparagraph (E)) and the total RMV (subparagraph (I)). This statutory context strongly suggests that, by requiring this court to order a change to the "roll" that applies to a "separate assessment of property," the legislature was referring to a change applicable to an entire tract of land, including all improvements on that tract of land. *See Shields v. Dept. of Rev.*, 266 Or 461, 470, 513 P2d 784 (1973) ("Generally, real property is assessed as a whole in the name of the owner. An exception is where the buildings, improvements, etc., are owned separately and apart from the land, in which case ORS 308.115(2) requires the assessor to assess and tax them separately.").

>        d. Additional statutory context confirms that land
>           and improvements are considered together.

In addition to the foregoing, the court notes the following indications that the phrase "separate assessment of property" refers to the entire parcel, including land and improvements.

(1) The legislature created exceptions to the general rule that land and improvements are assessed together.

The court finds most compelling the fact that the legislature expressly provided for the assessment of two kinds of property separately from the land. ORS 308.115(3) provides for separate assessment of land and improvements in cases where the ownership differs:

"Whenever any building, structure, improvement, machinery or equipment *is owned separately and apart from* the land or real property on which it stands or to which it is affixed, such building, structure, improvement, machinery or equipment shall be assessed and taxed in the name of the owner."

ORS 308.115(3) (emphasis added). This means that, unless the land and improvements are under different ownership from the land, they are assessed together. Otherwise, ORS 308.115(3) would be superfluous. ORS 174.010; *Northwest Natural Gas Co. v. Dept. of Rev.*, 347 Or 536, 556, 226 P3d 28 (2010). Similar assessment treatment exists for mineral or gas and oil rights under different ownership from the land. ORS 308.115(1) and (2).

(2) ORS 308.235 treats improvements as attributes of the real property.

In the primary statute directing assessors how to value real property, the legislature omitted any distinction between land and improvements. *See* ORS 308.235. When assessing real property, an assessor must "take[] into consideration":

"(a)   The applicable land use plans, including current zoning and other governmental land use restrictions;

"(b)   The *improvements* on the land and in the surrounding country and also the *use, earning power and usefulness of the improvements*, and any rights or privileges attached thereto or connected therewith; and

"(c)   The quality of the soil, and the natural resources in, on or connected with the land, its conveniences to transportation lines, public roads and other local advantage of a similar or different kind."

ORS 308.235(1) (emphases added). Thus, improvements and their specific traits, are valued as attributes of the real property as a whole.

2.   *Statutory and legislative history supports treating land and improvements together.*

The court now considers the statutory development and legislative history of ORS 305.288(1). Neither party provided any legislative history to the court, nor is there any legislative history directly on point. However, the court finds it relevant that the legislature has, from a very early date, consistently treated land and the improvements on the land together for assessment purposes, subject to specific statutory exceptions.

a. Pre-1951 law assessed all real property together and created exceptions.

Similar to today's statutes, Oregon territorial law provided that "lands" were required to be valued for taxation purposes, "taking into consideration the improvements on the land." General Laws of Oregon, Miscellaneous Laws, ch LVII, § 16, pp 751-52 (Deady & Lane 1843-1872). Both "real property" and "land" were defined to "mean and include not only the land itself, whether laid out into town lots or otherwise, with all things contained therein, *but also all buildings, structures, improvements, trees and other fixtures of whatever kind thereon*, and all right and privileges belonging or in any wise appertaining thereto." *Id.* § 2, p 748 (emphasis added). As of 1854, on the assessment roll the assessor was required to separately list only:

"1.   The names of all the taxable persons in his county;

"2.   A description of each tract or parcel of land to be taxed specifying under separate heads, the township, range and section, in which the land lies; or if divided into lots and blocks, then the number of the lot and block;

"3.   The number of acres and parts of an acre, as near as the same can be ascertained, unless the land be divided into blocks and lots;

"4.   The full cash value of each parcel of land taxed;

"5.   The full cash value of all the taxable personal property owned by, or to be taxed to such person, as provided by law;

"6.   The total valuation of all property taxed, real and personal."

*Id.* § 29, p 754.

The rule that land and all associated real property were valued and recorded on the roll together remained firmly in place until after the First World War. The legislature created the first exception in 1919, for separately owned mineral interests. Or Laws 1919, ch 356, § 1 ("[W]henever any mineral gas, coal, oil or other similar interests in real estate are *owned separately* and apart from and independently of the rights and interests owned in the surface of such real estate, such \*\*\* interests may be *assessed* and taxed *separately* from such surface rights \*\*\*.") (later codified as Oregon Code, title LXIX, ch 2, § 69-211 (1930)) (emphases added). The general rule continued to apply to timber interests, however. *See Nehalem Timber Co. v. Columbia Co.*, 97 Or 100, 106-07, 189 P 212 (1920), *reh'g den*, 97 Or 100, 191 P 318 (1920). There, the court held that timber rights must be assessed together with the land. *Id.* ("For tax purposes [the definition of 'lands,' 'real estate,' and 'real property'] inseparably yokes the timber to the land on which it is growing." (brackets added)). Relying in part on *Nehalem Timber*, as well as the specific statutory exception for mineral interests, in 1934 the Attorney General concluded that a county was prohibited from assessing timber separately from the land and thus could not foreclose on timber separately from the land. 16 Op Atty Gen 643 (1934), *available at* 1934 WL 31303. The following year, the 1935 legislature amended Oregon Code § 69-211 to allow timber interests owned separately from the land to be assessed separately from the land. Or Laws 1935, ch 274, § 5. This was later codified into Oregon Compiled Laws Annotated (OCLA) § 110-314.[24] It is notable

---

[24] Section 110-314 provides:

"Whenever any *standing timber*, or any mineral, coal, oil, gas or other severable interests in or part of real property is *owned separately* and apart from the rights and interests owned in the surface ground of such real property, such standing timber, minerals, coal, oil, gas or other such interests or parts may be *assessed* and taxed *separately* from such surface rights and

that, at this time, Oregon law still did not require an assessor to separately state the value of land and improvements on the assessment roll. OCLA § 110-336.

The last major exception, for separately owned improvements, came about during the Second World War. In 1942, the Oregon Supreme Court decided *First National Bank v. Marion County*, a case concerning whether fixtures could be assessed separately from the land and the building for tax years 1929 to 1939. 169 Or 595, 603, 130 P2d 9 (1942). The fixtures were assessed to the plaintiff bank (or its vendor), and the land and the building were assessed to an unrelated Oregon corporation. *Id.* at 597, 601-02. After reviewing a variety of cases, including *Nehalem Timber Company*, the court concluded that "various interests in real property are not, for the purpose of taxation, made severable and assessable in the names of the owners of the respective interests, except in certain specified instances, such as those mentioned by section 69-211, Oregon Code 1935 Supplement." *Id.* at 613. Because the county assessor had no authority to impose the assessments on the fixtures separately, the court held that the assessments were void. *Id.* at 616.

In 1943, in the wake of *First National Bank of Portland*, and of importance to this case, the legislature amended OCLA section 110-314 to allow separate assessment of improvements if they are owned separately from the land:

> "Whenever any standing timber, or any mineral, coal, oil, gas or other severable interest in or part of real property is owned separately and apart from the rights and interests owned in the surface ground of such real property, such standing timber, minerals, coal, oil, gas or other such interests or parts shall be assessed and taxed as real

---

interests in said real property and may be sold for taxes in the same manner and with the same effect as other interests in real property are sold for taxes. It is intended that this section shall apply to any severable interest in or part of real property owned separately and apart from the surface ground of such real property, whether the deed or other instrument whereby any such interest or part was conveyed or reserved be unconditional or conditioned on the removal of such standing timber, mineral, coal, oil, gas or other part of such real property in a specified manner or within a limited time; provided, however, that this section shall not apply to any such interest in or part of real property sold under an executory contract."

(Emphases added.)

or personal property in accordance with existing law in the name of the owner thereof, separately from such surface rights and interests in said real property and may be sold for taxes in the same manner and with the same effect as other interests in property are sold for taxes. *Similarly, whenever any building, structure, improvement, machinery, equipment or fixture is owned separately and apart from the land or real property whereon it stands or to which it is affixed, such building, structure, improvement, machinery, equipment or fixture shall be assessed and taxed in the name of the owner thereof.*"

Or Laws 1943, ch 304, § 2 (emphasis added). It was then clear that improvements that were owned separately and apart from the land could be assessed separately.

> b. 1951 amendments required itemized values, retained assessment of land and improvements together, created first percentage-based test

The requirement to itemize the value of land and improvements owned by the same person entered the law in 1951, as one of three relevant provisions enacted that year. The legislature amended OCLA section 110-336 to require the assessor to separately state the value of the land and the improvements on the roll:

"The assessor shall set down in the assessment roll, in separate columns, and according to the best information he can obtain:

"(1)   The names of all taxable persons in his county.

"(2)   A description of each tract or *parcel of land* to be taxed, specifying under separate heads the township and range in which the land lies, according to the government survey, except where the same is described by metes and bounds; or, if divided into lots and blocks, then the number or numbers thereof; provided, however, that the assessor shall describe lands in tracts not larger than a quarter-section when so requested by the owner or mortgagee thereof; and provided further, that the owner thereof shall, upon the request of the assessor, furnish a description of said property from which the area thereof can be computed accurately and the location and boundary lines made certain.

"(3)   The number of acres and parts of an acre of each parcel assessed, as nearly as can be ascertained, unless the same be divided into blocks and lots.

"(4)   The true cash value[25] of each parcel of land assessed, excluding all buildings, structures and improvements thereon.

"(5)   The true cash value of all timber assessed.

"(6)   The true cash value of all buildings, structures and improvements assessed.

"(7)   The taxable personal property of each person, as provided by law, and the true cash value thereof, and exemptions allowed, if any.

"(8)   The *total valuation of all real property* and, likewise, of all personal property assessed."

Or Laws 1951, ch 541, § 1 (emphases added). For purposes of this case, this provision as amended contains the same essential requirements now codified in ORS 308.215(1)(a)(A)-(I): to record data by parcel, to itemize the value of the land and improvements, and to record the total value.[26]

---

[25] The phrase "true cash value" expressed a fair market value standard that for purposes of this case is similar to today's "real market value." *Compare* Or Laws 1941, ch 440, § 4 (defining "true cash value" as "the amount such property would sell for at a voluntary sale made in the ordinary course of business, taking into consideration its earning power and usefulness under normal conditions") *with* ORS 308.205(1) (defining "real market value" as "the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction").

[26] The court notes that, effective from 1963 to 1999, the legislature changed the description of the values required to be shown for land, improvements, and in total, from the "true cash value" of each item to the "assessed value." *See* Or Laws 1963, ch 270. Barring further inquiry, this phrase might have led a reader to conclude that land and improvements were "separately assessed" for purposes of the 20 Percent Correction Test. In fact, however, the 1963 Legislative Assembly made this change only to conform to a short-lived regime, adopted in 1961 and repealed in 1967, under which all property was assessed at 25 percent of its true cash value. *See former* ORS 308.232(2) (1959) ("Except as provided in subsection (3) of this section, beginning with the assessment date January 1, 1961, all property shall be assessed at 25 percent of true cash value."). The calculation of "assessed value" was a simple arithmetic exercise, unlike today's more complex process under Measure 50. The legislative history of the 1963 change makes clear that the new reference to "assessed" value was mere housekeeping, and the court has found no evidence of an intention to depart from the principle that a "separate assessment" referred to both land and improvements together. *See* Minutes, House Committee on Taxation, Apr 26, 1963, 2 (testimony of Don Burnett, State Tax Commission) ("In the process of changing the expression from tcv to assessed valuation in the field of ad valorem taxation, it was overlooked that ORS 308.215

Also in 1951, the legislature amended the omitted property provisions to specifically add the discovery of *improvements* previously omitted from the roll as an event requiring an assessor to correct the roll for up to the prior five years. Prior law had required correction upon the discovery of "any real *** property." Or Laws 1951, ch 577, § 1.[27] As the State Tax Commission explained in a letter urging passage:

> "Under the existing law, real property is defined to include the improvements thereon, and likewise all trees upon the land, and thus an assessment of real property is conclusively presumed to include the improvements and timber located thereon, even though such improvements and timber have not in fact been taken into consideration in making the assessment. By amending the omitted property statute so that it refers specifically to improvements and timber, a way would be provided to add the same to the rolls as omitted property."

Letter from State Tax Commission to Dean Walker, Chairman, Senate Committee on Assessment and Taxation at 2 (Jan 16, 1951) (on file with Oregon State Archives). By referring to improvements "on land previously assessed

---

still speaks in terms of tcv."). Although the legislature repealed the 25 percent assessment regime in 1967, the legislature left the reference to "assessed value" in ORS 308.215 until the 1999 "cleanup" bill in the aftermath of Measure 50, when it substituted the current references to "real market value" essentially reverting to the pre-1963 language. *See* Or Laws 1967, ch 293, § 6 (amending ORS 308.232 to state: "All real or personal property within each county shall be assessed at 100 percent of true cash value."); Tape Recording, House Committee on Revenue, Mar 17, 1999, Tape 92, Side B; Tape 93, Side A, (testimony of James Manary, Department of Revenue, discussing need to avoid confusion with "assessed value" as defined under Measure 50).

[27] As amended, the provision stated:

"Whenever, after the return of the assessment rolls to the county assessor by the board of equalization, the officer having the possession of the roll shall discover or receive credible information, or if he has reason to believe that any real or personal property, *or any buildings, structures, improvements or timber on land previously assessed without the same,* has from any cause, been omitted, in whole or in part, in the assessment of any year or number of years not exceeding five years prior to the last roll so equalized and returned, or from the assessment roll or the tax roll, he shall proceed to correct the assessment or tax roll in his hands, and add such property thereto, with the proper valuation, and charge such property and the owner thereof with the proper amount of taxes thereon at the rate which the said property would have been taxed had it been properly upon the tax roll for the year or years as to which it was omitted[.]"

Or Laws 1951, ch 577, § 1 (emphasis added to show new text).

without the same," the legislature reinforced the existing general rule that an assessment ordinarily must *include* improvements as part of an assessment of the land. The new law simply provided a mechanism to correct an assessor's failure to do so.

Finally, the 1951 Legislative Assembly also enacted a new provision requiring the assessor to notify the taxpayer when the value of real property has increased by more than $100 or five percent, whichever is greater, over the assessed value of the preceding year, subject to certain exceptions (the Five Percent Notice Requirement). Or Laws 1951, ch 516, § 2. This requirement was codified as ORS 308.280 and remained in place until the legislature repealed it in 1991 as inconsistent with Measure 5.[28] It appears to have been a model for what is now the 20 Percent Correction Test in ORS 305.288(1); both provisions are based on a percentage change in the value of a "separate assessment of ✳✳✳ property":

> "(1)   Whenever, in any year, the county assessor shall increase the assessed valuation of any *separate assessment of real property* more than $100 or *five percent*, whichever is greater, over the assessed valuation of the preceding year, unless such increase represents an increase in certain proportion applicable to all real property upon the assessment roll, and whenever, in any year, the county assessor shall increase the unit valuation of personal property valued uniformly throughout the county on a unit basis and not on an individual basis, the said assessor shall give notice of such increase in valuation as hereinafter provided."

Or Laws 1951, ch 518, § 2 (emphases added).

### c. 1971 amendments created predecessor to 20 Percent Correction Test

In 1971, the legislature amended the Five Percent Notice Requirement in ORS 308.280 to require the assessor

---

[28] *See* Or Laws 1991, ch 96 (explaining that county board of equalization hearings each May are "redundant" in light of Measure 5); *see also* Or Laws 1991, ch 459 (HB 2550) (implementing Measure 5, Or Const, Art XI, § 11b). *See generally Multnomah County v. Dept. of Rev.*, 13 OTR 281, 285 (1995) ("Adoption of section 11b required the 1991 Oregon Legislature to reevaluate and reexamine the whole property tax system."). Among many other things, HB 2550 changed the assessment date from January 1 to July 1. *See* Or Op Atty Gen OP-6425 (1991).

to itemize the value of the land and improvements, as well as timber.[29] Or Laws 1971, ch 472, § 1. The legislative history suggests that the legislature intended the itemization to give more detailed information to homeowners as to the underlying events causing the value increase, such as a jump in land value or the construction of a home.[30] *See* Tape Recording, Senate Committee on Taxation, SB 33, Feb 22, 1971, Tape 3, Side 1 (testimony of Ira Jones, attorney for department). The court has found no indication, in case law or in the legislative history of the 1951 and 1971 acts that created and amended the Five Percent Notice Requirement, that the legislature intended an assessor to generate a notice if, for example, only the value of the improvements on a parcel of real property increased more than five percent. Moreover, the court notes that over the 40-year life of the Five Percent Notice Requirement, the Attorney General issued at least two informal opinions concluding that land and improvements must be counted together in determining whether the five percent threshold was reached. *See* Letter from Ted de Looze of Attorney General's office to Coos County Assessor Francis Flanagan (Dec 20, 1966) (concurring with prior opinion of Ira Jones) (available from Oregon State Archives); Letter from Donald Seymour of Attorney General's office to Clackamas County Assessor Donald Hattan (Sept 22, 1972) (same) (*summarized in* Or Dept of Rev, Pub No 150-303-408 "Property Tax Law Abstracts," ORS 308.280, OF 1589-V (1993 Cumulative Ed)).

---

[29] To clarify, the legislature appears to have *intended* the amendment to require the valuation of land, timber, and improvements on the notice. However, the specific paragraphs referenced were "(d), (e), and (f) of subsection (1) of ORS 308.215." Or Laws 1971, ch 472, § 1. At the time, those paragraphs of ORS 308.215(1) (1971) referred to the amount of acreage, and the values of land and timber, respectively. The apparent mistake appears to have resulted from a renumbering of ORS 308.215 in Or Laws 1971, ch 568, § 1, adding a new paragraph (c). The legislature corrected the mistake in 1975 and added a new requirement. The notice now had to state the value of the land, timber, improvements, and any percentage of undivided interest in the common elements of property subject to ORS 91.505 to 91.675. Or Laws 1975, ch 780, § 6; *see* ORS 308.215(1)(e)-(h) (1975).

[30] This motivation is in line with the concept that "[a]ssessments showing separate values for land and improvements are generally more easily justifiable to the taxpayer." *See Nepom v. Dept. of Revenue*, 272 Or 249, 254 n 3, 536 P2d 496 (1975) (quoting International Association of Assessing Officers, *Assessing and the Appraisal Process* 16 (2d ed 1968)).

    In the same 1971 bill in which it *amended* the Five Percent Notice Requirement in *former* ORS 308.280, the legislature also *created* a new and similar five percent test in the omitted property provisions of ORS 311.205. Section 3 of the bill enhanced[31] the department's authority to correct a "separate assessment of property" by allowing the department to correct the roll for the prior two years in the case of a valuation error exceeding $2,000 or five percent of the assessed value of the property (the Five Percent Correction Test). Or Laws 1971, ch 472, § 3.[32] Over the course of a regrettably complex history, summarized below, the Five Percent Correction Test in ORS 311.205(1) (1971) essentially gave rise to the current 20 Percent Correction Test now in ORS 305.288(1). The court has found nothing in the statutory development that suggests that the legislature intended

---

[31] The power to correct a separate assessment of property for the *current* year already existed, provided the department made the change by December 31 of the year. *See* Or Laws 1971, ch 472, § 3.

[32] ORS 311.205 (1971) provides, in pertinent part:

"(1)  If after the roll has been returned to the assessor from the board of equalization, the officer having charge of the rolls discovers errors or omissions of any kind therein, he may, with the assent and concurrence of the assessor or of the Department of Revenue, properly correct the rolls to conform to the facts in whatever manner may be necessary to make the assessment, tax or other proceeding whatsoever regular and valid. The officer in charge of the roll shall make any change requested by the Department of Revenue which relates to an assessment of property made by the department. Such corrections may be made to rolls for any year or years not exceeding five years prior to the last roll so returned. No change or correction applicable to all real or personal property of the same class or in the same area shall be made to the assessment roll for the current assessment year where any request or order of the Department of Revenue issued under ORS 305.090 or 306.111 is made or mailed later than July 31 of such year. No change or correction applicable to a *separate assessment of property* shall be made to the assessment roll for the current assessment year where any request or order issued under ORS 305.090 or 306.111 is made or mailed later than December 31 of such year.

"(2)  Notwithstanding the time limitations for corrections contained in subsection (1) of this section, the Department of Revenue may order the correction of the rolls for a *separate assessment of property* for any of the last two preceding years when all of the following conditions exist:

"(a)  The amount of the error is in excess of $2,000 or five percent of assessed value.

"(b)  The aggrieved individual has no statutory right of appeal.

"(c)  The aggrieved individual has notified the department of the error within one year after the error becomes actually known to him."

(Emphases added.)

to depart from the general rule that the phrase "separate assessment of property" referred to an assessment of the aggregate land and improvements constituting a parcel.

### d.    Later history of 20 Percent Correction Test

In 1983, the legislature removed the roll correction provisions that included the Five Percent Correction Test from ORS 311.205(2), it also removed the provisions declaring the department's supervisory authority from ORS 306.111, and it combined both sets of provisions into a new statute codified as ORS 306.115. Or Laws 1983, ch 605, §§ 1, 5-6. In doing so, the legislature eliminated the percentage-based correction test altogether, briefly expanding the department's discretion to determine when to correct the roll due to an asserted large overvaluation. By 1985,[33] however, the department had adopted a rule under ORS 306.115 specifying a 30 percent "gross error" threshold. OAR 150-306.115(3)(b)(A)(i) (1985). In 1987, the legislature amended ORS 306.115 to add the concept of a gross error, thereby essentially codifying the department's administrative rule. Or Laws 1987, ch 656, § 1.[34] However, the legislature's percentage threshold for gross error was 20 percent, not 30 percent as used in the department's administrative

---

[33] The department initially promulgated a rule without any percentage threshold. *See* OAR 150-306.115 (1984 Supplement).

[34] ORS 306.115 (1987) provides:

"(1) The Department of Revenue shall exercise general supervision and control over the system of property taxation throughout the state. The department may do any act or give any order to any public officer or employee that the department deems necessary in the administration of the property tax laws so that all properties are taxed or are exempted from taxation according to the statutes and Constitutions of the State of Oregon and of the United States. Among other acts or orders deemed necessary by the department in exercising its supervisory powers, the department may order the correction of clerical errors, errors in valuation or the correction of any other kind of error or omission in an assessment or tax roll as provided under sections (2) to (4) of this section.

"(2) The department may order a change or correction to the assessment or tax roll for the current assessment year applicable to all real or personal property of the same class or in the same area if the order of the department is mailed not later than October 15 of the current assessment year.

"(3)(a) The department may order a change or correction applicable to a *separate assessment of property* to the assessment or tax roll for the current assessment year and for either of the two assessment years immediately preceding the current assessment year if for the year to which the change or correction is applicable:

rule. ORS 306.115(5)(b) (1987). Notably, the 20 Percent Correction Test in ORS 306.115 (1987) continued to apply to a "separate assessment of property" and also referred to the Five Percent Notice Requirement in ORS 308.280 (1987), which likewise continued to apply to a "separate assessment of property." *See* ORS 308.280(2) (1987).[35]

In 1991, the legislature moved the provisions governing retrospective correction of *residential* property from ORS 306.115 to a new provision codified as ORS 306.116. Or Laws 1991, ch 459, §§ 32, 32a. This change also removed the gross error provisions from ORS 306.115, thereby limiting the availability of gross error relief to residential properties under new ORS 306.116 (1991).[36] ORS 306.116 remained

---

"(A) The assessor or taxpayer has no statutory right of appeal remaining and the department determines that good and sufficient cause exists for the failure by the assessor or taxpayer to pursue the statutory right of appeal; or

"(B) The department discovers that *with respect to the value given to the separate assessment of property* on the assessment or tax roll that a *gross error* in value exists; or

"(C) The department discovers other reason to correct the roll which, in its discretion, it deems necessary to conform the roll to applicable law without regard to any failure to exercise a right of appeal.

"(b) In the case of property other than residential property, the department may not order a change or correction to the assessment or tax roll under subparagraph (B) of paragraph (a) of this subsection if a notice of the valuation of the property was sent to the owner or person in control of the property for the year at issue in the manner and at the time provided in ORS 308.280 and 208.289 or 308.595.

"* * * * *

"(5) For purposes of this section:

"(a) 'Current assessment year' means the calendar year in which the need for the change or correction is brought to the attention of the department.

"(b) A 'gross error in value' exists if the difference between the value claimed or requested for the property and the true cash value of the property as it appears on the assessment or tax roll is equal to or greater than *20 percent* of the true cash value as it appears on the assessment or tax roll.

"(6) The remedies provided under this section are in addition to all other remedies provided by law, including but not limited to those available under ORS 305.285."

(Emphases added.)

[35] For nonresidential properties, no correction was available if the assessor had timely sent the notice of increased property value required by ORS 308.280. *See* ORS 306.115(3)(b) (1987).

[36] ORS 306.116 (1991) provides:

"(1) The Department of Revenue may order a change or correction applicable to a separate assessment of property applicable to a separate

unchanged until the creation of the Magistrate Division of the Tax Court, when the legislature amended it to transfer responsibility for correction of gross errors of residential property to the Tax Court. Or Laws 1995, ch 650, § 66a.[37] The legislature also changed the permissive authorization to the department into a command to the Tax Court. *Id.* ("The tax court *shall* order a change or correction * * *." (Emphasis added.)). In 1997, the legislature moved the provisions allowing correction of the assessment roll if a taxpayer or assessor had "good and sufficient cause" for failing to pursue the normal statutory right of appeal, provisions currently contained in ORS 305.288(3). Or Laws 1997, ch 541, §§ 89, 92 (deleting "good and sufficient cause" requirement from supervisory power under ORS 306.115 and adding similar language to ORS 306.116). In 1997, the legislature recodified ORS 306.116 to ORS 305.288.[38] Also in 1997, in an apparent "overcorrection" in response to Measure 50's redefinition of the term "assessed value" that year, the legislature initially changed the gross error definition in ORS 306.116 to refer

---

assessment of the property to the assessment and tax roll for the current tax year or for either of the two tax years immediately preceding the current tax year, or for any or all of those tax years, if all of the following conditions exist:

"(a) For the tax year to which the change or correction is applicable, the property was or is used primarily as a dwelling (or is vacant) and was and is a single-family dwelling, a multifamily dwelling of not more than four units, a condominium unit, a mobile home or a floating home.

"(b) The change or correction requested is a change in value for the property for the tax year and it is asserted in the request and determined by the department by order and no appeal is taken from the order, or determined by the Oregon Tax Court or the Supreme Court by order that constitutes a final determination of the matter, that the difference between the real market value of the property for the tax year and the value on the assessment and tax roll for the tax year is equal to or greater than 20 percent.

"(2) For purposes of this section, 'current tax year' has the meaning given the term under ORS 306.115.

"(3) The remedy provided under this section is in addition to all other remedies provided by law."

[37] ORS 306.116 as amended by Or Laws 1995, ch 650, § 66a, is set forth in the 1995 edition of the ORS by note, since the amendments would not become effective until September 1, 1997, pursuant to Or Laws 1995, ch 650, § 116. ORS 306.116 as amended does not appear in the 1997 edition of the ORS because, as will be discussed, it was renumbered to ORS 305.288.

[38] As indicated by the note after ORS 305.288 (1997), ORS 305.288 was recodified into chapter 305 but not made a part of any smaller series therein. ORS 305.288 did not become an official part of chapter 305 until 1999. Or Laws 1999, ch 767, § 3.

to the "assessed value," but as noted above, the 1999 legislature restored the term "real market value" in 1999. *See* Or Laws 1997, ch 541, §§ 91-92; Or Laws 1999, ch 767, § 1. Since 1999, for purposes of this case, ORS 305.288(1) has remained unchanged.

   e.   Conclusions from statutory development and legislative history

      One theme in this statutory development stands out. The exceptions in which land and improvements are assessed separately were carefully crafted in response to specific court cases that consistently applied the general rule requiring land and improvements to be assessed together unless otherwise specified. ORS 305.288(1) as it stands today must be viewed with that lens. By contrast, the legislature adopted separate listing of values for land and improvements under the same ownership as a convenience to taxpayers, and without implying that land and improvements are separately assessed.

   3.   *Additional Case Law*

      Finally, the court considers additional case law to the extent that it is relevant. No binding authority has addressed the precise issue in this case. There are, however, several cases that support the notion that land value and improvement value are just two components of one single assessment. Recently, the Supreme Court recognized that "an assessment entails separate valuation of both the land and the improvements." *Village at Main Street Phase II v. Dept. of Rev.*, 356 Or 164, 169, 175-76, 339 P3d 428 (2014). Although this court hesitates to ascribe too much significance to a single statement of the Supreme Court,[39] it is directly in accord with the holding of the court in this case.

---

[39] This is especially true when the statement was made in a different context. In *Village at Main Street*, the taxpayer appealed to the BOPTA and therefore was not pursuing relief under ORS 305.288. 356 Or at 170. A taxpayer who follows the normal appeals process through the BOPTA has a wider range of permissible challenges to the value of the property. The court sees no inconsistency between allowing a taxpayer in each year to challenge any value in an assessment (so long as it affects the taxpayer's tax burden), while also requiring a taxpayer under ORS 305.288(1) to first show a 20 percent error in the assessment before a correction to a prior year can be made.

A *single* assessment of property requires separate *valuation* of the land and improvements on that property.

In *Knapp v. City of Jacksonville*, the Supreme Court stated that "property taxes in Oregon are assessed on real property as a whole and in the name of the owner of the whole." 342 Or 268, 275, 151 P3d 143 (2007) (citing ORS 308.215 (1)(a)); *see also Shields v. Dept. of Rev.*, 266 Or 461, 470, 513 P2d 784 (1973). However, the real property that is assessed includes all lesser interests. *Knapp*, 342 Or at 275 (citing ORS 307.010(1)(b)(E)). "The limited instances in which severable, separately owned interests may be separately taxed are specifically prescribed." *Id.* (citing ORS 308.115); *see also Shields*, 266 Or at 470. Although the Supreme Court was not addressing ORS 305.288(1), its characterization of the general nature of assessment is consistent with this court's interpretation of a "separate assessment of property" under ORS 305.288(1).

Finally, the court considers *Nepom v. Dept. of Revenue*, 272 Or 249, 536 P2d 496 (1975). The Supreme Court in that case addressed the extent to which a plaintiff may limit the scope of an appeal in the Tax Court. *Id.* at 251. The plaintiff (taxpayer) contended solely that the improvements on her land were overvalued for the two tax years at issue. *Id.* at 250. She stipulated that the total value was as recorded on the assessment roll, and she and the assessor also stipulated that the value of the improvements was substantially lower than as shown on the roll.[40] Pursuant to the stipulation, the Tax Court reduced the value of the improvements. *Id.* at 251. However, the court also *increased* the value of the land so that the total value as corrected would equal the total value already on the roll. *Id.* The taxpayer appealed to the Supreme Court.

The Supreme Court concluded that a plaintiff may frame an appeal so as to challenge the value of the land only, the improvements only, or both. *Id.* at 256. Accordingly, the Tax Court erred in increasing the value of the land above

_____

[40] For tax year 1971-72, the value of the improvements on the roll was $73,320 and was stipulated by the parties to be $5,000; for tax year 1972-73, the value of the improvements on the roll was $75,510 and was stipulated by the parties to be $5,000. *Nepom*, 272 Or at 250-51.

the amount shown on the roll because the taxpayer had not appealed the land value. *Id.* Later cases address various procedural issues involving the way parties may or may not raise the value of particular components. *See, e.g., Bear Creek Plaza v. Dept. of Rev.*, 12 OTR 272 (1992) (taxpayer challenged only one component; assessor could not cross-appeal the other component before department); *Willamette Estates II, LLC v. Dept. of Rev.*, 357 Or 113, 120 n 2, 346 P3d 1207 (2015) (approving department's parallel exercise of supervisory authority on property under appeal to this court). The legislature later implicitly acknowledged the right of a party to appeal the value of only one component separately, when it enacted ORS 305.287 in 2011, allowing the opposing party to put the value of other components at issue. *See* Or Laws 2011, ch 397, § 2. The Supreme Court's recent decision in *Work* is also consistent with this line of cases and with today's holding. *See* 363 Or at 758-59 ("[W]e conclude that a party may appeal from a separate part of the magistrate's decision without necessarily putting the other parts of the magistrate's decision at issue before the tax court.").

Nothing in *Nepom* is inconsistent with the holding in this case. The Supreme Court in *Nepom* framed the issue narrowly as a procedural question: whether a party "by stipulation or by attacking only one of the valuations [can] raise the one specific issue on an appeal." 272 Or at 254.[41] The court cited ORS 308.215 and recognized the overall importance of separately stating land and improvement values on the assessment roll.[42] However, the court said nothing about

---

[41] *See also Poddar v. Dept. of Rev.*, 328 Or 552, 560, 938 P2d 527 (1999) ("The *Nepom* court did not suggest, let alone hold, that a party bringing a challenge under ORS 309.100 must challenge the total land valuation or total improvement valuation because of the structure of ORS 308.215(1). Rather, in *Nepom*, the court relied on the unexceptional proposition that parties may stipulate to some factual matters and dispute others.").

[42] The court stated, "The publication, 'Assessing and the Appraisal Process,' prepared by the International Association of Assessing Officers (2d ed 1968), states, at p. 16:

"'* * * Land and improvements are generally valued separately because of the different factors affecting the value of each.

"'There are other reasons for placing separate values on land and improvements, the most important being taxation. In many states the law requires separate values; in others it is done in order to insure equalization

whether a "separate assessment of property" encompasses a parcel of land and all improvements, as opposed to the land component or the improvements component, because the appeal did not involve a statute referring to a separate assessment of property.[43]

    4.   *Parties' Arguments*

        a.   *Ferschweiler* and other cases are overruled

      Taxpayer relies upon *Ferschweiler v. Clackamas County Assessor*, 16 OTR-MD 429, 434 (2001). However, that case is not directly on point, as the issue was whether the taxpayer could seek a correction under ORS 305.288(1) by applying the 20 Percent Correction Test to the value of only *one* of two buildings. The magistrate correctly decided that the taxpayer could not do so. In the Decision, however, the magistrate incorrectly reasoned that the taxpayer could prevail if the taxpayer could prove that *all* improvements collectively were overvalued by at least 20 percent, without regard to the value of the land. *Id.* at 434. The Decision implies that the phrase "separate assessment of property" in ORS 305.288(1) can refer to all improvements taken together and without the land, or to the land without any improvements, or to land and improvements taken together.

---

and uniformity. For example, land values may be changed without disturbing the value of the improvements, and periodic depreciation may be applied to improvements without disturbing the land value. Assessments showing separate values for land and improvements are generally more easily justifiable to the taxpayer.

    "'In addition to these factors, land and improvements should be valued separately for the following reasons: (1) Mortgages, so that the lending agency will know the value imputable to the land. (2) Accounting, in order to compute depreciation on improvement value and for income taxes. (3) Appraising, in order to determine the highest, best and most profitable use of the land—the key to economic obsolescence where land is under improved. (4) Leases, in order to compute the amount of the reversion. (5) Residual techniques, in order to compute the return to buildings.'"

*Id.* at 254 n 3.

[43] In fact, the taxpayer in her briefings invited the Supreme Court to hold that the department had violated the Five Percent Notice Requirement in *former* ORS 308.280 by seeking to increase the value of the land in contravention of the notice requirements. Appellant's Brief at 6, *Nepom*, 272 Or 249. Had the court based its decision on that argument, the analysis in this case might be more complicated, because *former* ORS 308.280 referred to a separate assessment of property, as discussed above. However, the court declined to address that issue in its opinion.

The foregoing analysis of the text, context, and legislative history of ORS 305.288(1), as well as other precedential case law, shows that the implication in *Ferschweiler* is incorrect, and the court hereby overrules *Ferschweiler* to the extent of that implication. The court leaves intact the magistrate's conclusion that the value of a separate building cannot be used for purposes of the 20 Percent Correction Test.[44]

> b.   The Department's Argument Based on "Dwelling"

The department argues that, by using the word "dwelling" the legislature signaled its intention that land and improvements should be counted together. The department correctly describes the plain meaning of "dwelling" as "a building or construction used for residence." (Citing *Webster's* at 706.) The department then points to more expansive definitions of the synonyms "abode" and "habitation," both of which encompass a dwelling "place." According to the department, however, a dwelling place could encompass *all* structures plus the underlying land but could not encompass all structures *without* the land because the assessment roll does not itemize the RMV of each structure on a parcel. From there, the department reasons that, as between the two possible meanings ("dwelling" means only the particular structure actually used for residence vs. "dwelling" means all structures plus the underlying land), the legislature must have intended the latter.

---

[44] The court also clarifies *dicta* in *Bear Creek Plaza v. Dept. of Rev.*, 12 OTR 272, 274 (1992). In rejecting the department's resort to a "cross appeal" under former law governing administrative hearings, the court stated: "An assessor is directed by the legislature to properly assess property (*see* ORS 308.330) and to assess the value of land separately from the value of improvements. ORS 308.215(1)(e) and (f)." *Id.* That statement should not be read to mean that the assessor makes a "separate assessment of property" as to the land and as to the improvements for purposes of the 20 Percent Correction Test in ORS 305.288(1)(b). Similar caution should apply with respect to the court's references in *dicta* to the "long-established system of assessing land and improvements separately" in *Taylor v. Clackamas County Assessor (I)*, 14 OTR 504, 510 (1999), and to the similar statement on reconsideration in that case, 14 OTR 581, 583 (1999) ("ORS 308.215 has long required the separate assessment of land and improvements."), *withdrawn*, 2000 WL 31987 (Jan 11, 2000). *See also Flavorland Foods v. Washington County Assessor*, 15 OTR 182, 185 (2000) (referring to "separate assessments for land and improvements"), *rev'd*, 334 Or 562 (2002); *Chart Development Corp. v. Dept. of Rev.*, 15 OTR 213 (2000), *vacated*, 335 Or 113 (2002) ("[A]ctual assessments were made by types of property such as land [and] improvements ***. Consequently, the total represented separate assessments.").

The court does not find this argument persuasive. In the same bill in which the legislature first adopted the dwelling requirement in the predecessor to ORS 305.288(1), the legislature amended several other property tax statutes containing the word "dwelling." *See* Or Laws 1991, ch 459. In each of those statutes, "dwelling" referred specifically to a *structure* used for habitation, consistent with the first dictionary definition the department cites here. *See, e.g.*, ORS 307.169 (1991), *amended by* Or Laws 1991, ch 459, § 46 (exemption for fallout shelters "located in structures used as dwellings"); ORS 308.229(4)(b) (1991), *amended by* Or Laws 1991, ch 459, § 95 (separately listing "dwelling," "other structures," and "land" in defining "homesite" for purposes of forestland special assessment); ORS 308.377(3) (1991), *amended by* Or Laws 1991, ch 459, § 121 (similar for farm use special assessment); *see also* ORS 308.372(3)(a)(A) (1991), *amended by* Or Laws 1991, ch 459, § 117a (referring to land "under dwellings" for purposes of farm use special assessment). The department points to no evidence that the legislature intended "dwelling" to mean anything other than the residential structure itself.

Rather than stretch to find an expansive meaning of "dwelling," the court returns to the statutory text. The key is that "the property" must be "used primarily" as a dwelling. ORS 305.288(1)(a). The court's prior analysis shows that this means that the primary use of improvements and land together must be as a dwelling. Although the legislature has not provided guidance in ORS 305.288(1) about how to apply this "primary use" test, the court need not speculate on its application here because the department has not raised the issue whether the property in this case is used primarily as a dwelling.

c.   Application of the 20 Percent Correction Test

Having determined that the property whose value is considered for purposes of the 20 Percent Correction Test in ORS 305.288(1) is the land plus improvements (unless they are separately assessed pursuant to ORS 308.115 or other law), the court now considers whether taxpayer has adequately stated a claim for relief under ORS 305.288(1). For tax year 2014-15, taxpayer failed to allege the land

value on the assessment roll,[45] therefore, the court cannot calculate the percentage change requested by taxpayer as to the parcel of real property. For that reason, taxpayer has failed to state a claim and her claim as to tax year 2014-15 is dismissed with leave to replead if taxpayer can, in good faith, allege a difference of more than 20 percent. For tax year 2015-16, taxpayer has alleged only a 7.6 percent difference between the value of the property requested and on the roll. Taxpayer's claim as to tax year 2015-16 is dismissed.

## V.  CONCLUSION

For purposes of ORS 305.288(1), taxpayer must demonstrate a 20 percent difference between the RMV requested and the RMV on the roll with respect to a "separate assessment of property." Except in certain statutorily specified circumstances not alleged to be present here, real property is assessed as a parcel of real property, and that parcel includes the land and improvements on the land. Taxpayer has not alleged sufficient information for the court to determine whether she requests a change in RMV for the parcel of real property equal to or greater than 20 percent for tax year 2014-15. Taxpayer has not alleged a change in RMV for the parcel of real property equal to or greater than 20 percent for 2015-16. Taxpayer's claims as to tax years 2014-15 and 2015-16 must be dismissed. Now, therefore,

IT IS ORDERED that Defendant's motion to dismiss Plaintiff's complaint as to tax years 2014-15 and 2015-16 is granted.

The court will contact the parties to set a case management conference to discuss how to address Plaintiff's complaint as to tax year 2016-17.

---

[45] Recall that the department stated in its motion that the land value for tax year 2014-15 was $59,400. However, the court cannot consider anything other than the allegation in a plaintiff's complaint on a motion to dismiss for failure to state a claim.